*NOT FOR PUBLICATION*

| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
| | **Order Filed on December 10, 2020<br>by Clerk,<br>U.S. Bankruptcy Court<br>District of New Jersey** |
| | Case No.:          16-28464 (SLM) |
| | Adv. No.:         17-01755 (SLM) |
| In Re:<br> OPENPEAK, INC. | Hearing Date:    August 29, 2018 |
| | Judge:               Stacey L. Meisel |
| CHARLES M. FORMAN, TRUSTEE<br><br>                                    Plaintiff(s)<br>v.<br> DANIEL GITTLEMAN,  DAVID BARCLAY,<br>CHRISTOPHER HILL, HOWARD KWON, JOHN<br>SCULLEY, ALEX KOMOROSKE, JOACHIM<br>GFOELLER, JR., J. TOMLISON HILL, III, JAMES<br>ROBINSON, IV, AND MORTON TOPFER<br><br>                                    Defendant(s) | |

## OPINION ON MOTIONS TO DISMISS

**APPEARANCES**:

Michael Holt, Esq.
FORMAN HOLT
66 Route 17 North
Paramus, NJ 07652
*Counsel for the Chapter 7 Trustee*

Joseph A. Caneco, Esq.
Mark E. Hall, Esq.
FOX ROTHSCHILD, LLP
49 Market Street
Morristown, NJ 07960

–and–

Jeffrey A. Tew, Esq.
Robert M. Stein, Esq.
RENNERT VOGEL MANDLER & RODRIGUEZ, P.A.
100 S.E. 2nd Street, Suite 2900
Miami, Florida 33131
*Counsel for Defendants Daniel Gittleman,*
*David Barclay, Howard Kwon and Christopher Hill*

Richard Brosnick, Esq.
AKERMAN LLP
666 Fifth Avenue, 20th Floor
New York, NY 10103

–and–

Joseph L. Rebak, *Pro Hac Vice*
AKERMAN LLP
98 Southeast Seventh Street, 11th Floor
Miami, Florida 33131
*Counsel for Defendants John Sculley, Alex*
*Komoroske, Joachim Gfoeller, Jr., J. Tomilson Hill,*
*III, James Robinson, IV and Morton Topfer*

**STACEY L. MEISEL, UNITED STATES BANKRUPTCY JUDGE**

Before this Court are two motions to dismiss the *Amended Complaint* ("**Amended Complaint**"),[1] filed by Charles Forman as Chapter 7 Trustee ("**Trustee**") of the estate of OpenPeak, Inc. ("**Debtor**" or "**OpenPeak**").  The first motion to dismiss is brought by the Debtor's directors (the "**Outside Director Defendants' Motion**").[2]  The director defendants named in the Amended Complaint are John Sculley, Alex Komoroske, Joachim Gfoeller, Jr., J. Tomilson Hill, III, James Robinson, IV, and Morton Topfer (collectively, the "**Outside Director Defendants**"). The second motion to dismiss is brought by the officers of the Debtor (the "**Officer Defendants' Motion**").[3]  The officer defendants named in the Amended Complaint are Daniel Gittleman, David Barclay, Howard Kwon, and Christopher Hill (collectively, the "**Officer Defendants**").  The central issue to both the Outside Director Defendants' Motion and the Officer Defendants' Motion (collectively, the "**Motions**") is whether the Trustee provided, in the fifty-plus page Amended Complaint, a short and plain statement providing the Defendants with notice of the claims asserted against them and the basis thereof.  If the Trustee has, then the Court must decide whether those claims have been adequately plead or are barred for lack of standing or collateral estoppel.

Having considered the Motions, the Trustee's oppositions, the Defendants' responses, oral argument, and the Parties' supplemental briefing on the issues raised at oral argument, and for the reasons set forth herein, the Court grants the Outside Director Defendants' Motion.   The Court also grants the Officer Defendants' Motion in part and denies in part, allowing the Trustee to replead.  The following constitutes the Court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

## <u>JURISDICTION</u>

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Standing Order of Reference from the United States District Court for the District of New Jersey, dated July

23, 1984 and amended September 18, 2012.  This Adversary Proceeding arises under 11 U.S.C. §§ 544(b), 548(a)(1), 550(a) and seeks damages because of Defendants' purported breach of fiduciary duties, waste of corporate assets, unjust enrichment, and fraudulent transfers.  The Court may not enter a final order on a state law claim "in the absence of consent or unless it implicates a claim filed in the bankruptcy case by the Defendants."[4]  If the parties consent, then the Court may enter a final order on these claims.[5]  The Officer Defendants expressly stated that they do not consent to entry of final orders by the Court, while the Outside Director Defendants preserved the right "to withhold their consent to entry of final orders or judgments from the Bankruptcy Court."[6] Bankruptcy courts have the authority, however, to enter an order on a motion to dismiss.[7] Furthermore, the Outside Director Defendants and Officer Defendants challenge the amended complaint on the grounds of lack of subject-matter jurisdiction—asking this Court to evaluate jurisdiction.  The Officer Defendants concede that this Court can enter an order on the Officer Defendants' Motion.  The parties seek this Court's decision regarding jurisdiction, which must be reviewed by this Court in the first instance.  Therefore, while the parties may have stated otherwise, based upon the Defendants' request from this Court, the parties have consented to the Court's entry of a final order regarding the Motions.  Venue of this Adversary Proceeding is proper pursuant to 28 U.S.C. § 1409(a) and (d).

## **FACTUAL BACKGROUND**

### **The Debtor's Business**

The Officer Defendant Gittleman founded the Debtor in 2002.  The Debtor initially focused on home and office automation, and IP (internet protocol) video conferencing.  It later transitioned to the production of other hardware, including tablets.  The Debtor's principal place of business was in Boca Raton, Florida.  By 2012, the Debtor moved away from hardware, and solely focused

on developing software for its ADAM platform.  ADAM was a program intended to allow an employee to securely access his or her company workspace on a personal mobile device.  AT&T and Blackberry Corporation were among the Debtor's largest customers.  However, funding for the Debtor's day-to-day business operations came from private capital raises.  From 2011–2016, the Debtor raised over $120 million from private investors.

Officer Defendant Gittleman served as the Debtor's former Chief Executive Officer and Chairman of the Board.  Officer Defendant C. Hill served as its President.  Officer Defendant Barclay served as its Executive Vice President.  Officer Defendant Kwon served as its Vice President and General Counsel.  In addition, Gittleman, and Kwon also served on the Debtor's board of directors.  The Outside Director Defendants were independent directors of the Debtor's board.  All Defendants held equity in, and/or convertible debt of the Debtor.

According to the Amended Complaint, ADAM failed to meet customers' expectations because structural problems in the software program hindered its scalability.  These issues resulted in only a very small percentage of licensed customers activating ADAM on their mobile devices.  As a result, the Debtor was unable to generate meaningful revenue from the ADAM platform.  As debts became due, revenue failed to meet projections.  The Debtor then sought to sell itself to potential acquirers while also raising additional funding from existing investors.  Sale efforts were unsuccessful, and investors began to make repayment demands.

**The Chapter 7 Case and Commencement of the Adversary Proceeding**

On September 27, 2016, the Debtor commenced its case by filing a voluntary chapter 7 petition.[8]  On December 4, 2017, the Trustee commenced this Adversary Proceeding.[9] The Parties entered two consent orders regarding the briefing schedule in the Adversary Proceeding.[10]  On March 6, 2018, the Trustee filed the Amended Complaint.[11]  The Amended Complaint sets forth

allegations regarding the Defendants' purported mismanagement of the Debtor, which the Trustee asserts led to its subsequent failure and bankruptcy.

The Amended Complaint requests relief based on the assertion that certain employees recalled that the Officer Defendants were not interested in ADAM's long-term functionality. Instead, the Officer Defendants ignored employees' concerns related to ADAM.[12]  The Amended Complaint alleges that the Officer Defendants were "demo-driven." Meaning they only cared that the demo version worked well enough to show a potential customer that the Debtor could offer a certain feature.[13]   The Amended Complaint further alleges that the Officer Defendants misrepresented facts regarding the performance and product features of ADAM to potential business partners.[14]  The Amended Complaint also alleges that former employees recall that the Officer Defendants: (1) made promises to customers about the ADAM product that they knew the Debtor could not fulfill; and (2) knew that the ADAM product was poor quality and contained glitches based on the large number of complaints already received.[15]

The Amended Complaint describes alleged problems between the Debtor and AT&T, the Debtor's largest customer.[16]  The Amended Complaint describes—while quoting emails from AT&T executives to the Officer Defendants—that AT&T was dissatisfied with functionality and scalability of AT&T's version of ADAM, referred to as "Toggle."[17]  The Amended Complaint also alleges problems between the Debtor and Blackberry.[18]  The Amended Complaint further alleges that Blackberry notified the Debtor that it believed the Debtor violated its contract with Blackberry.  According to the Amended Complaint, Blackberry was dissatisfied with malfunctions and defects in the software and Debtor's failure to resolve those issues.[19]  The Amended Complaint alleges that "during 2014 and 2015, as OpenPeak was raising millions of dollars, unbeknownst to investors, its major customers Blackberry and AT&T were very dissatisfied."[20]

As it pertains to Officer Defendant Gittleman, the Amended Complaint alleges that former employees described Officer Defendant Gittleman as a "stereotypical shady salesman," who "knew about the poor performance of OpenPeak's products because [an] employee had numerous conversations with Officer Defendant Gittleman about the problems."[21]   Furthermore, former employees recall that Officer Defendant Gittleman's focus was more on raising capital and making promises that were difficult to keep.[22]   The Amended Complaint alleges Gittleman spent the Debtor's money recklessly on himself and people close to him without any regard for the best interest of the Debtor.[23]   Additionally, the Amended Complaint states that according to one of the Debtor's former investors, Officer Defendant Gittleman would take a private jet and stay at a villa in Las Vegas's MGM Mansion during the Consumer Electronics Show each year, spending as much as $75,000.[24]   It further alleges that Officer Defendant Gittleman excessively spent the Debtor's money on separate rooms for other OpenPeak employees.[25]   The Amended Complaint alleges that Officer Defendant Gittleman's excessive spending also took place at the same time that the Debtor raised additional funds "to meet additional cash demands for the rest of the month of January 2013."[26]   The Amended Complaint further alleges that Officer Defendant Gittleman caused the Debtor to spend money on projects that did not serve a legitimate business purpose, and on salaries for people who served no real function.[27]

The Amended Complaint asserts that one of the Debtor's investors, Hercules Capital Inc. ("**Hercules**"), retained a consulting group to perform a field audit of the Debtor.[28]   The consulting group commented on the Debtor's wasteful spending and excessive salaries.[29]   The Amended Complaint alleges that the Debtor's 2013 financial statement shows that the Debtor found one of its software products to be "worthless" with an approximate net value of zero.[30]   It further alleges that the Debtor transitioned the programming language for ADAM from Java to PHP, which was

done to conform with industry standard.  Former employees, however, allegedly dispute this reasoning and recalled that even the PHP version had fundamental problems.[31]

The Amended Complaint asserts that during 2014 and 2015, OpenPeak was insolvent.[32] The Amended Complaint alleges that the Debtor was unable to meet its debt obligations without raising additional capital.  The Amended Complaint further alleges that the Officer Defendants misrepresented the Debtor's financial condition in order to successfully raise more capital during this time period.[33]  One example alleged in the Amended Complaint is that Officer Defendant Gittleman emphasized the number of licenses transferred to customers when he met with investors in order to portray the Debtor in a positive light.[34]  The Amended Complaint alleges that this was misleading because the Debtor only generated revenue from the few transferred licenses that were activated.[35]  It further alleges that in an email to investors, Officer Defendant Barclay and Officer Defendant Gittleman misrepresented to investors the success of the Debtor's product and functionality.[36]  Finally, the Amended Complaint alleges that the Officer Defendants made misrepresentations regarding the Debtor's financial projections.[37]

The Trustee alleges that the Officer Defendants were deceitful during negotiations with potential acquisition candidates.[38]  In addition to allegations that the Officer Defendants misrepresented ADAM's functionality and the Debtor's financial performance, the Amended Complaint alleges that Officer Defendant Gittleman's deceitful actions caused two potential acquisitions to fall apart.[39]  The Amended Complaint states that Officer Defendant Gittleman obtained board approval to persuade existing investors to provide more capital through a bridge round of funding.[40]  It alleges that this "strong-arm strategy" was discussed at a board meeting on January 27, 2013, where Officer Defendant Gittleman allegedly indicated to investors that they would be diluted unless they made new investments.[41]  The Trustee contends that the Director

Defendants breached their fiduciary duties by permitting Officer Defendants to continue raising capital when the Debtor was already insolvent.[42]  The Amended Complaint alleges that the debt incurred in 2014 represented a 400% increase in the Debtor's outstanding debt in 2015.[43]  The Amended Complaint further alleges that the Outside Director Defendants acted in their own self-interest by causing the Debtor to borrow as much capital as possible in the hopes for a sale.[44]

Count I seeks to recover damages against all Defendants for their purported breaches of fiduciary duties on the grounds that, collectively, the Defendants "violated their fiduciary duties of good faith, fair dealing, loyalty, due care, reasonable inquiry, disclosure, candor, management, oversight and supervision."[45]  The Amended Complaint alleges that each of the Defendants "had a fiduciary duty to ensure that [the Debtor] disseminated accurate, truthful and complete information to its creditors" and each "knowingly caused the Company to disseminate to its creditors, materially misleading and inaccurate information."[46]  The Trustee alleges that "[t]hese actions could not have been a good faith exercise of prudent business judgment as they were in violation of applicable law."[47]  The Trustee also alleges that the Defendants breached their fiduciary duties by "failing to prudently supervise, manage and control the operations of [the Debtor]."[48]  The Amended Complaint also alleges that the Defendants committed a further breach of their fiduciary duty of care by failing to seek bankruptcy protection sooner, and that they "breached their duty of loyalty, by seeking to recover money on their own investments, while ignoring what was in the best interest of [the Debtor]'s stakeholders, causing harm to both [the Debtor] and its stakeholders."[49]  The Trustee's asserts that "[a]s a direct and proximate result of the Defendants' foregoing breaches of fiduciary obligations," the Debtor "suffered substantial damages, not only monetary, but also to its corporate image and goodwill, which ultimately led to the Company filing for bankruptcy."[50]

Count II seeks to recover damages from the Officer Defendants based on their purported waste of corporate assets.  The Trustee alleges that the Officer Defendants "allowed for lavish and wasteful spending, for their own benefit or for the benefit of other employees, including, without limitation, personal loans, personal air travel, over the top hotel accommodations, high-tech gadgets, and unnecessary salaries – all while the [Debtor] was in a dire financial condition."[51]  The Trustee alleges that these actions violated their duties to the Debtor, and resulted in damage to the Debtor.[52]

Count III seeks to recover damages from the Officer Defendants on a theory of unjust enrichment.  Specifically, the Trustee alleges that the Officer Defendants were unjustly enriched "as a result of the compensation and other benefits they received while simultaneously breaching their fiduciary duties owed to the [Debtor]."[53]  The Trustee requests that the Officer Defendants disgorge any benefits they received.[54]

Count IV seeks to recover $1.6 million in compensation paid, and thousands of dollars in reimbursements made to the Officer Defendants in the two years prior to the Petition Date.  It is alleged that these transfers are constructively fraudulent because, at the time each payment was made the Debtor was, or was rendered, insolvent, inadequately capitalized or unable to pay its debts as they became due.[55]

Altogether, the Trustee seeks judgment: (1) against all Defendants and in favor of the Debtor for damages sustained by the Debtor because of Defendants' purportedly wrongful conduct; (2) awarding the Debtor restitution from the Officer Defendants, and disgorgement of all "profits, benefits and other compensation" obtained by them; (3) awarding the Trustee costs and disbursements, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and (4) any other related relief the Court would deem just and proper.

**The Motions to Dismiss**

The Outside Director Defendants' Motion was filed on April 20, 2018.[56]   Howard Kwon

submitted a Declaration in Support.[57]   The Outside Director Defendants assert dismissal is

warranted on four separate grounds.  *First*, as a matter of Delaware law, the Outside Director

Defendants argue that any claims for breach of the duty of care are barred by the exculpatory

provisions of the Debtor's Articles of Incorporation, and to the extent not exculpated, are barred

by the business judgment rule.  *Second*, the Outside Director Defendants assert the Trustee failed

to plead a cognizable breach of fiduciary duty by them because the Amended Complaint

improperly lumps any purportedly wrongful actions and breaches together with those of the Officer

Defendants.  Such lumping makes it impossible to decipher what actions, if any, the Outside

Director Defendants undertook that caused damage to the Debtor.  *Third*, the Trustee lacks

standing to pursue the claims asserted in the Amended Complaint because the Trustee is not

pursuing estate claims, but rather specific contractual claims of specific creditor constituencies.

*Fourth*, the Outside Director Defendants contend that any of portion of the claims asserted against

them—for acts taken prior to September 27, 2013—are barred by Delaware's three-year statute of

limitations on actions for breaches of fiduciary duty by a Delaware director.

The Officer Defendants' Motion was also filed on April 20, 2018.[58]   Again, Mr. Kwon

filed a Declaration in Support thereof (the "**Kwon Declaration**").[59]   The Officer Defendants argue

that the Amended Complaint must be dismissed as to the claims against them because the Trustee:

(1) is collaterally estopped from relitigating the factual issues underpinning the Amended

Complaint; (2) fails to satisfy the heightened pleading requirements of Federal Rule of Civil

Procedure 9(b) as applicable to the fraud or fraud-like counts of the Amended Complaint;

(3) incorrectly applied the law of the State of New Jersey (rather than Delaware) to his remaining

claims; and (4) improperly incorporates prior, dismissible counts of the Amended Complaint in subsequent counts, resulting in the Amended Complaint being subject to dismissal in its entirety as a "shotgun pleading."  The Officer Defendants also specifically incorporated by reference the arguments made by the Outside Director Defendants as fully applicable to them.

The Officer Defendants' collateral estoppel argument relies upon the assertion that the "central factual issues set forth in the Adversary Complaint have already been litigated to a final judgment in favor of three of the Officer Defendants in a lawsuit styled *Hercules Capital, Inc. (F/K/A Hercules Technology Growth Capital, Inc.) v. Daniel J. Gittleman, et al.*, Case No.: 9:16-cv-81663, United States District Court, Southern District of Florida" (the "**Hercules Lawsuit**").[60] The Hercules Lawsuit included the following Officer Defendants: Daniel J. Gittleman, David Barclay, and Howard Kwon (collectively, the "**Hercules Defendants**").  The Officer Defendants support their argument by citing to the opinion and order entered in favor of the Hercules Defendants after an eight-day bench trial by the Honorable Donald M. Middlebrooks of the United States District Court for the District of South Florida in the Hercules Lawsuit.  The Hercules Lawsuit's complaint, opinion, and order (the "**Hercules Pleadings**") are attached as exhibits to Mr. Kwon's Declaration.[61] The Officer Defendants submit that this Court may take judicial notice of the Hercules Pleadings because the Trustee heavily relied on them in the Amended Complaint, and they are a matter of public record.[62]  The Officer Defendants also note there are multiple references to the Hercules Lawsuit (and testimony given at the trial) in the Amended Complaint.[63] In the alternative, the Officer Defendants request that the Court treat their motion to dismiss as a request for summary judgment pursuant to Federal Rule of Civil Procedure 12(d).

The Hercules Lawsuit was brought by Hercules Capital Inc. ("**Hercules**") against Officer Defendants Gittleman, Barclay and Kwon.  None of the other Defendants were parties to the

Hercules Lawsuit. Hercules asserted the following causes of action against the named Officer Defendants, in both their individual and corporate capacities: (1) negligent misrepresentation; (2) fraud and fraudulent misrepresentation; and (3) civil conspiracy to defraud Hercules. The Officer Defendants argue that Eleventh Circuit law applies. Therefore, the Amended Complaint is barred by the issues decided in the Hercules Lawsuit because: (1) the allegations raised in the Adversary Complaint are identical to the issues in the Hercules Lawsuit; (2) these issues were actually litigated to final judgment; (3) Judge Middlebrooks's determination of these issues was a critical and necessary part of the final judgment; and (4) the Trustee provided material assistance to Hercules thereby providing a full and fair opportunity to litigate in the Hercules Lawsuit.

On July 20, 2018, the Trustee filed opposition to both Motions.[64] The Trustee argues that he has standing because he is pursuing the Debtor's claims for breach of fiduciary duty, and that he only seeks to recover damages sustained by the Debtor (not its creditors). As to the Outside Director Defendants, the Trustee emphasized that the Amended Complaint only asserts a claim based on their purported breach of the fiduciary duty of loyalty. As to the Officer Defendant's Motion, the Trustee asserts that Rule 9(b) does not apply to the Amended Complaint because none of the counts are fraud-like claims. The Trustee acknowledges, however, that courts have applied Rule 9(b) to fraudulent transfer claims when those claims were accompanied by allegations of specific fraud or claims related to federal securities law.[65] The Trustee distinguishes those cases, claiming that when a bankruptcy trustee asserts a claim for fraudulent transfer that the standard is relaxed and liberally construed.[66] Regarding Count II (corporate waste) and Count III (unjust enrichment), the Trustee argues that he adequately pleaded the elements for each claim, and agrees that Delaware law applies. Regarding Count III (unjust enrichment), the Trustee also notes that the Amended Complaint specifically seeks disgorgement as the appropriate equitable remedy.

13

Accordingly, the Trustee's failure to assert there is no adequate remedy at law is without merit. As to Count IV (fraudulent transfer), the Trustee argues that he adequately pleaded a claim as a matter of federal and New Jersey law. To the extent that Delaware law applies to this count, the Trustee argues that this is a distinction without a difference. The Trustee further argues that Delaware and New Jersey law are substantively congruent. Therefore, the Trustee contends, under either law, the Amended Complaint meets the notice pleading requirements.

As for the Officer Defendants' collateral estoppel argument, the Trustee argues that it "should be flatly rejected" because the Trustee was not a party to the Hercules litigation.[67] While acknowledging that the Hercules Lawsuit and this Adversary Proceeding share common facts, the Trustee argues that, as a matter of the federal law on collateral estoppel, he cannot be barred from bringing this lawsuit. The Trustee asserts: (i) he is neither in privity with Hercules nor was he "virtually represented" by Hercules in the Hercules Lawsuit, nor has he enjoyed Hercules' "extensive cooperation" in pursuing this Adversary Proceeding; and (ii) the Hercules Lawsuit and this Adversary Proceeding are not substantially similar because they "allege different causes of action, name different defendants, cover different time periods and allege different facts."[68] The Trustee further argues that it is premature for the Court to consider the Officer Defendants' collateral estoppel argument at the dismissal stage, and requests that it be preserved for later stages in this action.[69] As part of this argument, the Trustee argues that it is inappropriate for the Court to review the Hercules Lawsuit documents at the dismissal stage because the Amended Complaint did not explicitly rely on them. The Trustee further argues that, while the Court may take judicial notice of the Hercules Pleadings, it may not take judicial notice to establish the truth of the facts asserted in the Amended Complaint.

The Trustee also seeks denial of the request to convert the Officer Defendants' Motion to a motion for summary judgment because meaningful discovery has not yet taken place. The Trustee refutes that the Amended Complaint is a "shotgun pleading" because he asserts it specifically lists which defendants are subject to which claims and describes the conduct relevant to each cause of action. Lastly, to the extent the Court is inclined to grant the Motions, the Trustee seeks leave to replead the Amended Complaint under Federal Rule of Civil Procedure 15(a).

On August 15, 2018, the Defendants filed further replies in support of the Motions.[70] The Outside Director Defendants continue to challenge Trustee's standing to bring the Adversary Complaint because they argue that he is pursuing damages sustained by the Debtor's creditors, and not the Debtor. Moreover, the Outside Director Defendants argue that, even if the Court granted the Trustee leave to replead, his claims are barred by the Delaware business judgment rule. The Officer Defendants restated their existing arguments, but also asserted that to the extent collateral estoppel prevents claims against the Officers, it should apply with equal force to applicable claims against the Outside Director Defendants.[71]

The Court held oral argument. At oral argument, the Trustee again conceded that the Amended Complaint only seeks to recover against the Outside Director Defendants based on their purported breaches of the fiduciary duty of loyalty to the Debtor. The Trustee also conceded that any claims for breaches of fiduciary duty prior to September 27, 2013 were time-barred. It was clear, however, that certain issues required further briefing. Therefore, by Order dated August 31, 2018, and as indicated during the hearing, the Court requested supplemental briefing from the parties regarding three issues: (1) application of the business judgment rule in evaluating a motion to dismiss when a plaintiff alleges a breach of the duty of loyalty; (2) choice of law with respect to the application of collateral estoppel; and (3) whether collateral estoppel bars the Amended

15

Complaint.  The Court also directed all parties to file a letter with the Court correcting any citations made in their respective pleadings since mistakes were made in the initial briefing and mentioned at oral argument.[72]

On September 28, 2018, the Trustee filed his supplemental brief.[73]  The Trustee continues to assert that the Outside Director Defendants are not entitled to the presumption of the business judgment rule because he seeks recovery for their purported breach of the duty of loyalty.  The Trustee also asserts that the federal common law of issue preclusion, which requires privity, applies here and therefore bars the application of collateral estoppel to prevent its claims against the Officer Defendants.  Even if federal common law does not apply, the Trustee asserts that the Officer Defendants cannot establish that Hercules virtually represented the Trustee in the Hercules Lawsuit.  The Trustee, again, requests that this Court defer a ruling on the issue of collateral estoppel to a later stage in the litigation.

On October 12, 2018, the Outside Director Defendants filed their supplemental reply.[74] The Outside Director Defendants restated their position that Count I should be dismissed as to them because the Trustee failed to plead a claim of breach of the duty of loyalty, irrespective of the applicability of the business judgment rule.  On October 19, 2018, the Officer Defendants filed their supplemental reply.[75]  The Officer Defendants briefed the issue of collateral estoppel again arguing that Eleventh Circuit, rather than Third Circuit, precedent applies and that privity amongst the parties in both the Hercules Lawsuit and this Adversary Proceeding is not required.  Even if privity is required, the Officer Defendants argue that the Court should find that the Trustee was virtually represented by Hercules.  This Opinion follows.

16

## **DISCUSSION**

### I.  **MOTIONS TO DISMISS STANDARDS**

#### A.  **Rule 12(b)(1) – Lack of Subject Matter Jurisdiction**

The Outside Director Defendants argue that dismissal pursuant to Federal Rule 12(b)(1), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7012 ("**Rule 12(b)(1)**"), is appropriate because it may be "implicated" by their challenge to the Trustee's standing argument, which is an issue of subject matter jurisdiction.[76]  Rule 12(b)(1) provides that a motion to dismiss may be granted due to "lack of subject-matter jurisdiction."[77]  The burden of demonstrating the existence of federal jurisdiction is on the party seeking to invoke it.[78]  Unless affirmatively demonstrated, a federal court is presumed to lack subject matter jurisdiction.[79]

When ruling on a Rule 12(b)(1) motion, a distinction must be made between a facial and factual attack.[80]  A Rule 12(b)(1) motion filed before the movant has answered constitutes a "facial challenge" to subject matter jurisdiction.[81]  In deciding a Rule 12(b)(1) motion to dismiss filed prior to an answer, the court must "review only whether the allegations on the face of the complaint, taken as true, allege facts sufficient to invoke the jurisdiction of the district court."[82]

#### B.  **Rule 12(b)(6) – Failure to State a Claim**

Federal Rule of Civil Procedure 12(b)(6), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7012, provides that a motion to dismiss may be granted if the complaint fails "to state a claim upon which relief can be granted" ("**Rule 12(b)(6)**").[83]  In analyzing whether a complaint under Rule 12(b)(6) is sufficient, courts may "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputed authentic documents if the complainant's claims are based upon the documents."[84]  Public records include—but are not limited to—judicial opinions, judicial proceedings, and hearing transcripts.[85]

Courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."[86]

However, factual allegations "must be enough to raise the right to relief above the speculative level" and "should 'plausibly suggest[ ]' that the pleader is entitled to relief."[87] When a party's allegations, "however true, could not raise a claim of entitlement to relief," then "this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." [88] In reviewing a plaintiff's allegations, a court should conduct a three-part analysis.

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Third, when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.[89]

Conclusory allegations are likewise insufficient to survive a motion to dismiss.[90] Courts "need not accept as true 'unsupported conclusions and unwarranted inferences.'"[91]

"[I]f a complaint is vulnerable to 12(b)(6) dismissal, a [] court must permit a curative amendment, unless an amendment would be inequitable or futile."[92]

### C. Pleading Standards – Rule 8 and Rule 9

Contrary to the Defendants, the Trustee argues that the Amended Complaint should be analyzed under Rule 8(a) and is not required to meet the heightened standard demanded by Rule 9(b).[93]

Federal Rule of Civil Procedure 9(b) ("**Rule 9(b)**"), made applicable to this case pursuant to Federal Rule of Bankruptcy Procedure 7009, requires that "[i]n all averments of fraud or

mistake, the circumstances constituting fraud or mistake shall be stated with particularity."[94] On

the other hand, Federal Rule of Civil Procedure 8(a) ("**Rule 8(a)**") mandates the plaintiff provide

enough information to put each defendant on notice of the allegations and damages sought

separately against each defendant.[95]

Plaintiffs must plead allegations in the complaint with particularity and include "the

'circumstances' of the alleged fraud in order to place the defendants on notice of the precise

misconduct with which they are charged, and to safeguard defendants against spurious charges of

immoral and fraudulent behavior.'"[96] "The liberal notice pleading of Rule 8(a) is the starting point

of a simplified pleading system, which was adopted to focus litigation on the merits of a claim."[97]

Rule 8(d)(1) further expresses: "[e]ach allegation must be simple, concise, and direct."[98] "'Taken

together, Rules 8(a) and [(d)(1)] underscore the emphasis placed on clarity and brevity by the

federal pleading rules.'"[99] A complaint that simply "tenders 'naked assertion[s]' devoid of 'further

factual enhancement'" is insufficient.[100]

Courts in this circuit apply Rule 8(a) to claims of breach of fiduciary duty, corporate waste,

and unjust enrichment claims.  "A plaintiff must meet the pleading requirements of Fed. R. Civ.

P. 8(a) in stating state law claims for breach of fiduciary duties."[101] "[T]he Rule 9(b) heightened

pleading requirement generally does not apply to the state law claims of breach of fiduciary duty.

. .[and] unjust enrichment. . .".[102] In *Forman v. Salzano*, the court held that "[t]he heightened

pleading requirement of Rule 9(b) 'generally does not apply to the state law claims of breach of

fiduciary duty . . . . [and] aiding and abetting breach of fiduciary duty. . . .'"[103] "Rule 9(b) is

applicable to allegations of fraud and mistake only, other claims must satisfy the general pleading

requirements of Fed. R. Civ. P. 8(a).'"[104]

This Court will, therefore, apply Rule 8(a) based on the allegations made and the standard adopted by courts in this circuit. The standard of pleading will be discussed—to the extent necessary—in the appropriate discussion sections.

## II.    THE OUTSIDE DIRECTOR DEFENDANTS' MOTION

### A.   The Trustee Possesses Standing to Pursue the Debtor's Claim Against the Outside Director Defendants for Breach of the Fiduciary Duty of Loyalty

The Outside Director Defendants challenge the Trustee's standing to prosecute the Amended Complaint. The Outside Director Defendants argue that all of the Trustee's allegations of harm incurred, and damages sustained, are claims of individual creditors (such as Hercules) and other third parties (specifically, customers and third-party purchasers).[105] The Outside Director Defendants rely on the proposition that a bankruptcy trustee has "no standing generally to sue third parties on behalf of creditors of the estate."[106] To support their argument that the Amended Complaint crosses the line between seeking recovery for damages endured by the Debtor versus damages sustained individually by its creditors, the Outside Director Defendants point to the Trustee's allegation that he "seeks redress on behalf of OpenPeak *and its creditors* for Defendants' . . . improper actions."[107]

Simply seeking "redress on behalf" of the Debtor's creditors, however, is an inadequate reason to find that the Trustee lacks standing. As will be discussed, the Amended Complaint could be worded better and suffers numerous infirmities. However, the Court finds standing is not one of them. The Outside Director Defendants are correct that "individual *creditors* of an *insolvent* corporation have *no right to assert direct* claims for breach of fiduciary duty against corporate directors."[108] However, as the Delaware Supreme Court also explained in *Gheewalla*:

> [w]hen a corporation is *solvent,* those duties may be enforced by its shareholders, who have standing to bring *derivative* actions on behalf of the corporation because they are the ultimate beneficiaries

> of the corporation's growth and increased value. *When a corporation is insolvent, however, its creditors take the place of the shareholders as the residual beneficiaries of any increase in value*.[109]

In other words, the solvency or insolvency of the corporation "determines which constituency has the right to pursue a derivative claim based on a breach of fiduciary obligation."[110]

Accordingly, while "a bankruptcy trustee may assert only the claims that belong to the bankruptcy estate, those claims may include the interests of creditors in the sense that the trustee has the duty to marshal the assets of the estate so that they can be distributed to creditors on a *pro rata* basis."[111]  In other words, the trustee may "pursue[ ] the interests of the bankruptcy estate and derivatively the interests of its creditors  . . ."[112]

Nonetheless, the Outside Director Defendants argue that the Trustee's "attempt, as a bankruptcy trustee, to assert breach of fiduciary duty claims 'on behalf of . . . creditors' is contrary to Delaware law and standing principles."[113]  However, the Fifth Circuit in *Torch* specifically found that, in the context of a chapter 11 case, "[a] cause of action for breach of fiduciary duty owed to the corporation that is property of the corporation at commencement of the chapter 11 case becomes property of the debtor's estate, regardless of whether outside of bankruptcy the case was more likely to be brought by the corporation directly or by a shareholder or creditor through a derivative suit."[114]  Accordingly, the Fifth Circuit held that a liquidating trustee had standing to pursue the corporate debtor's claims for breaches of fiduciary duties against its former directors because the claims had been properly assigned to the liquidating trust under the confirmed chapter 11 plan.[115]  The court, however, dismissed the complaint because it failed to adequately allege any "actual, quantifiable damages" sustained by the debtor.[116]

The standing argument turns on whether the Trustee seeks to recover damages sustained by the Debtor or the Debtor's creditors and third parties.  Here, the Trustee seeks to recover on

behalf of the Debtor.  Creditors benefit to the extent the Trustee is successful.  It is undisputed that

the Debtor may assert claims belonging to the estate, and that this Court has subject matter

jurisdiction over estate property pursuant to 11 U.S.C. § 541.  Therefore, the Court finds that

dismissal pursuant to Rule 12(b)(1) is not warranted.

However, pursuant to Rule 12(b)(6), the Court must still determine whether the Amended

Complaint adequately alleges (1) that the *Debtor* has a claim for breach of fiduciary duty of loyalty

against the Outside Director Defendants and, if so, (2) what, if any, allegations in the Amended

Complaint demonstrate "actual, quantifiable" harm sustained *by the Debtor* as a result.

### B.  The Trustee Failed to Plausibly Allege That the Outside Director Defendants Breached Their Duty of Loyalty

The parties agree that Delaware law applies to Count I.[117]  As required in the context of a

Rule 12(b)(6) dismissal motion, the Court should first "take note of the elements" that the Trustee

needs to plead in order to state a claim.[118]  As a matter of Delaware law, "[t]he elements of a breach

of fiduciary duty claim are (1) that the fiduciary duty exists and (2) that the fiduciary breached that

duty."[119]

For a fiduciary duty to exist, there must first be a fiduciary relationship.  In Delaware, it is

"well settled that directors owe fiduciary duties to the corporation[.]"[120]  The Amended Complaint

alleges that each of the Outside Director Defendants were fiduciaries of the Debtor.[121]  Here, no

one disputes that the Outside Director Defendants owed fiduciary duties to the Debtor.

The debate at this stage of the Adversary Proceeding is whether the Trustee alleged

adequate facts to demonstrate that the Outside Director Defendants' breached their fiduciary

duties.  Importantly, the Trustee clarified that the *only* fiduciary duty at play regarding the Outside

Director Defendants is the duty of loyalty.  In Delaware, the "duty of loyalty mandates that a

corporate fiduciary act with 'undivided and unselfish loyalty to the corporation' and that 'there

22

shall be no conflict between duty and self-interest."[122]  In other words, the "best interest of the corporation and its shareholders takes precedence over any interest possessed by a director, officer or controlling shareholder and not shared by the stockholders generally."[123]

"There are two ways to breach the duty of loyalty: (1) self-dealing and (2) failure of oversight."[124]  The Court now examines the elements for a breach of the fiduciary duty of loyalty with the allegations in the Amended Complaint to determine whether there are either (a) mere conclusions that are not entitled to the assumption of truth or (b) well-pleaded factual allegations that should be assumed as truthful in the Court's determination of "whether they plausibly give rise to an entitlement for relief."[125]

## 1. **Self-Dealing**

"Traditionally, the term 'self-dealing' describes the 'situation when a [corporate fiduciary] is on both sides of a transaction . . . ."[126]  In distinguishing between "classic self-interest from incidental director interest . . . the nature of the director interest must be substantial."[127]  Even absent self-dealing, however, a plaintiff may establish a breach if it shows that "board action was not undertaken in a good faith effort to further the stockholders' best interests, but for some personal reason, such as entrenchment."[128]

The Trustee argues that its "allegations regarding the [Outside Director Defendants] stem from their self-dealing and breach of the well-recognized duty of loyalty."[129]  To that end, the Amended Complaint makes the following general allegations as to the Outside Director Defendants purportedly acting in their own self-interest, rather than that of the Debtor:

- [B]y failing to protect the interests of the stakeholders, *members of the Board breached their fiduciary duty of loyalty by acting in their own financial interests to the detriment of the Company's stakeholders.*[130]

- OpenPeak's Board was comprised of eight members. All Directors held financial interests in OpenPeak equity or convertible debt. Based on filed claims in the OpenPeak bankruptcy, all Directors had financial interests aligned with holders of OpenPeak equity. *As such, it served the financial interests of those Directors to avoid bankruptcy regardless of the deepening insolvency of the Company.*[131]

- Similarly, it served the Defendants' financial interests for OpenPeak to borrow as much money as possible in the hope that, no matter how far-fetched, the Company would be sold. *Only a sale of the Company would have* enabled the Officer Defendants and *nearly every member of the Board to maximize the value of their OpenPeak holdings.*[132]

The Court agrees with the Outside Director Defendants' argument that these allegations are entirely conclusory and fail to show that. The gist of the foregoing allegations is that the Outside Director Defendants' own interests inherently conflicted with the Debtor's best interests because the Outside Director Defendants held equity. Therefore, continuing to extend and increase the Debtor's debt was in their better interests. By doing so, the Outside Director Defendants could delay a bankruptcy filing to effectuate a sale to a third party, ostensibly because their equity interests would be wiped out in a bankruptcy.[133] However, the argument that a director is inherently at odds with his or her company because the director may hold an equity interest in it, is entirely at odds with the standard practice of companies granting stock incentives to directors to ensure that their interests are aligned with that of the company's shareholders. A potential bankruptcy does not change this analysis. As observed by the Delaware Chancery Court in *Quadrant Structured Prods. Co., Ltd. v. Vertin*:

> [w]hen directors of an insolvent corporation make decisions that increase or decrease the value of the firm and affect providers of capital differently only due to their relative priority in the capital stack, *directors do not face a conflict of interest simply because they own common stock or owe duties to large common stockholders*. Just as in a solvent corporation, common stock ownership standing alone does not give rise to a conflict of interest.[134]

Here, the Trustee's allegations simply fail to rise to the level of plausibility.  The act of simply approving additional funding—even if insolvent—fails to demonstrate a cognizable cause of action.[135]

The Amended Complaint fails to allege any facts related to self-dealing that could plausibly suggest that the Trustee is entitled to relief.[136]  The Amended Complaint fails to allege that the Outside Director Defendants were on two sides of any transaction or that they approved any of the subsequent debt issuances of the Debtor for a "personal reason, such as entrenchment."[137]  Further, the Trustee expressly states that the Outside Directors were aligned with OpenPeak's equity holders.  Contrary to the Trustee's assertion, such an alignment does not provide the pathway to relief.  Likewise, there was nothing wrong with the Outside Directors permitting OpenPeak to borrow money to permit it to seek a sale.  The Amended Complaint fails to plausibly allege that the Outside Director Defendants' breached their duty of loyalty on the grounds of self-dealing. Nothing in the allegations show that the Outside Directors did anything wrong.  As such, a curative amendment, on the theory of breach of duty of loyalty for self-dealing is both inequitable and futile.  Count I breach of loyalty as it relates to the Outside Director Defendants' alleged self-dealing is dismissed with prejudice.

### 2.  <u>Lack of Oversight</u>

The Trustee's remaining theory of recovery against the Outside Director Defendants is based on the Outside Director Defendants' alleged failure to properly oversee the Officer Defendants.  To establish director liability for lack of oversight, the Court must find a lack of good faith.[138]  "Where directors fail to act in the face of a known duty to act, thereby demonstrating a conscious disregard for their responsibilities, they breach their duty of loyalty by failing to discharge their fiduciary obligations in good faith."[139]  As recognized by the Delaware Court of

Chancery in its seminal decision on the duty of care, *In re Caremark Int'l Inc. Derivative Litig*, a claim based on a company's directors "allow[ing] a situation to develop and continue which exposed the corporation to enormous legal liability and that in so doing they violated a duty to be active monitors of corporate performance. . . is possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment."[140]

The Outside Director Defendants argue that the Trustee waived the oversight liability argument.[141]  This is not entirely accurate.  In his Opposition, Trustee specifically argues that:

> To the extent that the Court construes the Complaint's allegations as triggering a Caremark claim, though it should not, Plaintiff's allegations are sufficient.  Here, the Complaint alleges that, despite understanding OpenPeak's financial problems and the effect additional debt would have on the Company, the Director Defendants permitted Gittleman to continue raising millions of dollars in debt, even after the Company *became* insolvent, did not have a functional software product, and had intellectual property valued at no more than a few million dollars. . . . The Director Defendants were intimately aware of the Company's financial problems, as they approved all requests to raise additional capital, would have reviewed Company financials in connection with Board meetings, and were all successful and sophisticated businessmen. *Thus, the Director Defendants failed to oversee OpenPeak and allowed the Officer Defendants to recklessly run OpenPeak despite having knowledge of the Company's problems and the harm that would likely continue to occur.*[142]

Therefore, the Trustee's claim rests on the issue of failure to act, which "describes the lack of good faith conduct that the *Caremark* Court held is 'a necessary condition' for finding director oversight liability.'"[143]  The Trustee appears to have hedged his bets regarding *Caremark* even though he asserts *Caremark* does not apply—when clearly it does.  Therefore, the Court must still determine whether there are sufficient allegations to give rise to a breach of the duty of loyalty because of the Outside Director Defendants' purported oversight failure.

The Amended Complaint contains the following allegations regarding lack of oversight:

- Directors of a corporation are required to oversee the management of the company and protect the interests of the company and its stakeholders.[144]

- Here, the Board failed to protect the interests of the Company's stakeholders. *The Board also failed to properly oversee the management of the Company, served as a rubberstamp for the Officer Defendants and kept their heads in the sand as the Officer Defendants ran the Company in a reckless, wasteful, and self-serving manner*, in violation of their fiduciary duties and the Company's Code of Business Ethics.[145]

- After OpenPeak became insolvent, OpenPeak's stakeholders were its creditors. *The members of the Board breached their fiduciary duties by permitting Defendant Gittleman to continue raising millions of dollars in debt after the Company became insolvent, did not have a functional software product, and had intellectual property valued at no more than a few million dollars*.[146]

- Indeed, even though the Company had completely written down the value of its software by the end of 2013, and never had a fully operational product after that, the Board enabled the Officer Defendants to raise millions of dollars through debt during 2014 and then increase the Company's outstanding debt by more than $76 million – representing a 400% increase in outstanding debt – during 2015 alone.[147]

- Once OpenPeak was insolvent, the Board should have sought to protect the interests of the creditors, sought to prevent Defendant Gittleman from raising additional funds through debt offerings, and caused the Company to file for bankruptcy protection or restructure its debt. The creditors would have benefited from a bankruptcy filing if it had been done at the appropriate time.[148]

Taken together, the Trustee appears to be arguing that the Outside Director Defendants showed a "conscious disregard" of their fiduciary duties by (1) serving as a "rubberstamp" of the Officer Defendants' allegedly improper actions, (2) enabling the Debtor to obtain additional debt in 2014 while the Debtor was insolvent, and (3) not filing a bankruptcy sooner.

As to the allegations related to rubberstamping, they are wholly conclusory and fail to state with any specificity what the Outside Director Defendants did, or did not do, in approving the

Officer Defendants' decisions. As to the Debtor not filing a bankruptcy sooner, it is axiomatic as a matter of Delaware law that the "directors of an insolvent firm do not owe any particular duties to creditors. . . They do not have a duty to shut down the insolvent firm and marshal its assets for distribution to creditors[.]"[149] Absent a showing that it was in dereliction of their business judgment, the Outside Director Defendants cannot be held liable solely for failing to take actions for the benefit of the Debtor's creditors.

As to the allegation that the Outside Director Defendants enabled the Debtor to incur additional debt in 2014, and that the incurrence of additional debt while insolvent alone adequately establishes a failure to monitor, was specifically rejected by the court in *Midway Games*. There, the court found that the complaint at issue failed to show how the challenged transactions, including the debtor's incurrence of additional debt, were inherently inappropriate where they provided "essential funding" and the plaintiff did not otherwise allege that the terms of the debt deals were "unfair or that the Board Defendants profited from them" or that the debt specifically harmed the debtor, as opposed to its creditors.[150] The *Midway Games* court dismissed those claims against the director defendants.[151] Here, the Trustee's allegations fail to show how approval of debt was equivalent to a "conscious disregard" of the Outside Director Defendants' duty of loyalty. Furthermore, the Trustee's allegations fail to show that the Debtor's debt deals were "unfair or that the [Outside Director Defendants] profited from them."[152] In other words, the Trustee's allegations fail to follow the roadmap established in *Midway Games* to even come close to adequately pleading a lack of oversight. Again, the Amended Complaint fails to "plausibly suggest" that the Plaintiff is entitled to any relief. As such a curative amendment, on the theory of breach of duty of loyalty for failure of oversight is both inequitable and futile.

### 3. **The Business Judgment Rule**

The Outside Director Defendants argue that the Trustee's breach of duty of loyalty claim is also barred by the business judgment rule, relying on *In re Tower Air, Inc.*, 416 F.3d 229 (3d Cir. 2005). In *Tower Air*, the Third Circuit examined whether a complaint filed by a Chapter 7 trustee in federal court had to satisfy the heightened pleading requirements of Delaware law for breach of fiduciary duty, or only meet the requirement of a "short and plain" statement as required by Rule 8.[153] In reversing the District Court's decision applying Delaware's heightened pleading standard, the Third Circuit explained that "[g]enerally speaking, we will not rely on an affirmative defense such as the business judgment rule to trigger dismissal of a complaint under Rule 12(b)(6). [However,] [a] complaint may be dismissed under Rule 12(b)(6) where an unanswered affirmative defense appears on its face."[154] So, when the business judgment defense is asserted, the plaintiff "must plead that he overcomes the presumption created by that rule" "by showing either inattention or irrationality."[155]

In *Tower*, the Third Circuit found one of the trustee's five causes of action failed to pass the business judgment hurdle.[156] The Third Circuit found the dismissed claim—which asserted that the directors "breached their duty to act in good faith by declining to repair Tower Air's engines"—was an "allegation of a classic exercise of business judgment because a reasonable business person could have reached that decision in good faith."[157] In other words, "bad faith is not the only possible explanation for the decision."[158] The Third Circuit found that the plaintiff could not prove any set of facts consistent with his claim that would entitle the plaintiff to relief.[159]

The Outside Director Defendants argue that, like the trustee in *Tower Air*, the Trustee here fails to allege that the Outside Director Defendants' actions were not a "classic exercise of business judgment." There has been no plausible allegation of either "inattention or irrationality." As such,

a curative amendment on the theory of lack of oversight by the Outside Director Defendants is both inequitable and futile.

Here, the Trustee failed to meet the plausibility standard that the Outside Director Defendants breached their duty of loyalty to the Company for either self-dealing or lack of oversight. Therefore, dismissal of Count I of the Amended Complaint pursuant to Rule 12(b)(6) is warranted. Further, because the Trustee failed to state a claim that the Outside Director Defendants breached their fiduciary duty of loyalty, the Court need not analyze whether the Amended Complaint adequately pleads that the Debtor or its creditors sustained damages resulting from the Outside Director Defendants' actions.

For the reasons set forth, the Outside Director Defendants' Motion is granted in its entirety.

## III.    THE OFFICER DEFENDANTS' MOTION

### A. The Trustee Has Standing to Pursue the Debtor's Claim Against the Officer Defendants for Breach of the Fiduciary Duty of Loyalty

The Officer Defendants incorporate by reference the Outside Director Defendants' argument that challenges the Trustee's standing to prosecute the Amended Complaint.[160] Identical to the Outside Director Defendants' standing argument, the Officer Defendants' argument turns on whether the Trustee solely seeks to recover damages sustained by the Debtor's creditors and third parties, not the Debtor. For the same reasons that apply to the Outside Director Defendants, the Court finds that dismissal pursuant to Rule 12(b)(1) is not warranted.

### B. The Pleading Standard

The Court incorporates the previous discussion of motion standards applicable to this Opinion. The Officer Defendants argue that because the claims asserted by the Trustee are fraud or fraud-like, the Amended Complaint must be pleaded with specificity.[161] The Trustee argues that the Amended Complaint is not required to meet the heightened standard demanded by Rule

9(b).[162]   Again, this Court will generally apply the Rule 8(a) standard based on the allegations made, and the standard adopted by courts in this circuit.   The standard of pleading will be discussed—to the extent necessary—in the appropriate necessary.

### C. The Amended Complaint is a "Shotgun Pleading"

The Officer Defendants' Motion asserts that all counts of the Trustee's Amended Complaint must be dismissed because the Amended Complaint is a "shotgun pleading."[163] Pleadings that fail to contain a "short and plain statement of the claim showing that the pleader is entitled to relief" are "disparagingly referred to as 'shotgun pleadings.'"[164]

There are generally four types of complaints that can be considered shotgun pleadings:

> (1) a complaint containing multiple counts where each count adopts the allegations of all preceding counts; (2) a complaint that is replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action; (3) a complaint that does not separat[e] into a different count each cause of action or claim for relief; and (4) a complaint that assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.[165]

"The 'unifying characteristic' of these four types of shotgun pleadings 'is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.'"[166]   "[W]hether a complaint is an impermissible shotgun pleading is not wholly dependent on whether it incorporates all preceding paragraphs or names multiple defendants, but on whether the complaint 'give[s] the defendants adequate notice of the claims against them and the grounds upon which each claim rests.'"[167]

### 1. Dismissal of "Shotgun Pleadings" is Not Limited to Allegations Requiring the Heightened Pleading Standard

Before analyzing whether the Amended Complaint is a "shotgun pleading," the Court addresses the threshold question of whether a "shotgun pleading" analysis is appropriate for a

pleading that is largely if not wholly, governed by Rule 8. The Officer Defendants rely on Equal Protection cases to assert that the Amended Complaint is a "shotgun pleading."[168] The Trustee contends that the facts of those cases are distinguishable because Equal Protection cases require specificity; therefore, the holdings are inapplicable.[169]

In *Hynson*, the Third Circuit found that to eliminate the "common shotgun pleading approach to these equal protection claims. . . .", Equal Protection complaints must plead facts with specificity.[170] The *Bartol* case, also cited by the Officer Defendants, expands upon the analysis of a "shotgun pleading."[171] The *Bartol* Court identified the following factors contribute to finding a complaint to be a "shotgun pleading:" the length of the complaint; the number of counts; whether the defendants were specifically identified; whether some defendants were even present at the time of the alleged incident, or had any interaction with the plaintiff; and that each of the multiple counts "adopt[ed] the allegations of all preceding accounts. . . ."[172] These factors, taken together, "'fail . . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.'"[173]

The Trustee seems to ignore that courts in this district rely on these "shotgun pleading" factors when analyzing claims under the Rule 8 pleading standard.[174] Similarly, when complaints appear to assert allegations requiring pleading under both Rules 8(a) and 9(b), but fail to sufficiently plead under either Rule, the court will apply a "shotgun pleading" analysis.[175] Bankruptcy courts also rely on the factors outlined in *Bartol* to determine whether a complaint constitutes a "shotgun pleading."[176] Simply put, the "shotgun pleading" analysis is not limited to actions requiring specificity. Finding the Trustee's argument to be without merit, the Court turns to the four types of "shotgun pleadings" to determine whether the Amended Complaint qualifies as one.

### 2. **The Amended Complaint Contains Multiple Counts Adopting and Realleging All Preceding Counts**

The Officer Defendants argue that the Amended Complaint is a "shotgun pleading" because each count contains the following statement: "Plaintiff repeats and realleges *each and every allegation* contained above as if fully set forth herein."[177]  By repeating and realleging all allegations, the Officer Defendants contend that when an earlier count is dismissed, a subsequent count is defective and should also be dismissed.[178]  In other words, if this Court dismisses Count I of the Amended Complaint, the Officer Defendants assert that Counts II, III, and IV are automatically dismissed.

The Trustee asserts repeating and realleging allegations is common pleading practice and permissible by the courts in this district.[179]  The Trustee rejects the contention that dismissal of a preceding count renders subsequent counts defective.[180]

The Court agrees with the Officer Defendants that the Amended Complaint is a "shotgun pleading."  Repeating and realleging all allegations is a prime example of a "shotgun pleading." Such a complaint is devoid of the necessary care needed to ensure that an adversary complaint with multiple allegations, multiple defendants, and multiple counts meets the standards required by Rule 8.  The Trustee's argument that such a form of pleading is customary fails to cure the defects in the Amended Complaint.  A customary pleading style does not mean that such a style is correct.  It only works until someone objects, which is what happened here.  Now, the Trustee needs to create new customs, preferably that adhere to the ones set forth in the Rules of Civil Procedure and caselaw.  As will be further discussed, the Amended Complaint repeatedly lumped the Defendants and causes of action, included conclusory statements, and  relied on allegations that were barred by the statute of limitations..  Such a pleading style is a quintessential shotgun pleading.

33

### 3. **The Amended Complaint is Replete with Conclusionary, Vague, and Immaterial Facts not Obviously Connected to any Particular Cause of Action**

The Trustee filed the Amended Complaint and in it asserts a number of time barred allegations.   The Trustee ultimately acknowledged and admitted that the statute of limitations for Counts I, II, and III is three years.[181]  Thus, any allegation—and unfortunately there were many— predating September 27, 2013 cannot be considered for those counts because it is admittedly time-barred.   Further, regarding Count IV, the Court also finds that many of the fraudulent transfer claims asserted by the Trustee, are time-barred, which the Court will discuss further in the fraudulent transfer section.   The time-barred allegations present the Court with the burdensome task of parsing through, often immaterial facts, to determine what is relevant and not time-barred.   Once again, such a pleading exemplifies a "shotgun pleading." The Trustee indicates that the time-barred allegations help tell the story that supports the causes of action.   The Trustee is incorrect.   The time-barred allegations are confusing and unnecessary and provided no assistance to the Court.   The Trustee failed to identify the time barred allegations as background information or anything else.   Instead, he presents all of the allegations, whether time barred or not as if they are relevant, and supportive to the various counts.   They are not.   Again, such a format exemplifies a shotgun pleading.

### 4. **The Amended Complaint Fails to Separate into a Different Count Each Cause of Action or Claim for Relief**

The Amended Complaint fails to differentiate each fact and each cause of action particular to each Defendant.   The Amended Complaint is against ten Defendants and lists four different counts.  The Amended Complaint fails to list a separate cause of action for each Defendant.   Again, the Trustee's failure to separate each cause of action demonstrates a "shotgun pleading."

**5. The Amended Complaint Asserts Multiple Claims Against Multiple Defendants, Largely Without Specifying Which of the Defendants are Responsible for Which Act or Omission and Often Fails to State Which of the Defendants the Claim is Brought Against.**

The Officer Defendants argue that the Amended Complaint fails to specify which Officer Defendant is allegedly responsible for which act or omission.[182]  The Trustee contends that the Amended Complaint defines each group of defendants and identifies which defendants are subject to which count.[183]

The Court agrees with the Officer Defendants.  The Amended Complaint defines Defendants Daniel Gittleman, David Barclay, Christopher Hill, and Howard Kwon collectively as "Officer Defendants."  The Amended Complaint similarly defines Defendants Daniel Gittleman, John Sculley, Alex Komoroske, Joachim Gfoeller, J. Tomilson Hill, James Robinson, and Morton Topfer as the "Director Defendants" or "Directors."  When referring to both groups of defendants, the Amended Complaint simply titles the group as "Defendants."

However, it is unclear when the Defendants are lumped together who did what, with whom, when, and where it occurred.  Grouping the Defendants creates confusion as to which Officer Defendant allegedly performed which act or omission.  While generally defining the Defendants in these terms is not improper, each Officer Defendant individually must be on notice as to which allegation makes a claim against him.  How are each of the Officer Defendants supposed to know the alleged wrongdoing for which he is accused, if his name is not even mentioned?  The Officer Defendants should not have to guess.

The Amended Complaint mentions Officer Defendant Gittleman in numerous paragraphs.  At times, it is almost as an aside that the Trustee lumps other Defendants into the same allegations.  The Officer Defendants are sometimes listed by name; sometimes as the defined group.  This structure creates great confusion and leaves unclear if an Officer Defendant is not specifically

named, what claims, if any, are made against that particular Officer Defendant.  In other words,

the individual officers are left guessing as to what he needs to defend against.  Are each of the

Officer Defendants supposed to defend against every allegation?  Or should they be on notice as

to which allegation/cause of action relates to him?  Clearly, it is the latter, which is not the case

here.

The following paragraphs, taken directly from the Amended Complaint, illustrate the lack

of clarity in the allegations:

- The Director Defendants did nothing to reign [sic] in the wasteful spending by the Officer Defendants.[184]

- Additionally, once OpenPeak became insolvent, the Defendants were required to act in the best interests of the creditors. The Defendants, however, ignored their fiduciary duties and burdened the Company with more and more debt until they were unable to identify any interested investors.[185]

- [Defendant] Gittleman and the other Officer Defendants sought to issue more debt to benefit themselves to the detriment of the Company and its stakeholders.[186]

- Defendant Gittleman and the other Officer Defendants enticed investors by misrepresenting facts and omitting material information about OpenPeak and its ADAM product.  Defendants Gittleman and Barclay repeatedly communicated overly positive and optimistic statements about the success of ADAM, demand by customers, and expected revenues. Contrary to their statements, however, ADAM suffered from substantial functionality problems.[187]

The Court notes that paragraph 44 begins by alleging that Officer Defendant Gittleman and

the other Officer Defendants enticed investors through misrepresentation.  Paragraph 44, however,

then mentions that Officer Defendants Gittleman and Barclay communicated certain information.

This is confusing.  Are the other Officer Defendants to be on notice that this allegation applies to

them as well?  This use of the pen for broad strokes is common throughout the Amended

Complaint.  For instance, the Amended Complaint also states:

- Several former employees recalled that Defendant Gittleman and other Company officers would force developers to add new features into ADAM despite the fact that the developers told those officers that there were existing problems that needed to be addressed first. The Company's officers' refusal to address existing problems compounded the issues and made them even harder to address. This was true even for the simplest of fixes.[188]

- The Company's officers caused OpenPeak to loan them money, in amounts between $100,000 and $200,000, and had the Company forgive the debt without the officer making any payments.[189]

- The Officer Defendants, with the approval of the Director Defendants, improperly and deceptively reused the previously recorded revenue in order to make OpenPeak appear more appealing to a potential investor or suitor.[190]

- The Officer Defendants repeatedly misrepresented to stakeholders that OpenPeak could be sold for hundreds of millions of dollars. In reality, the Company was not worth anything close to what was represented.[191]

- In 2015, while the Company was insolvent, the Officer Defendants misrepresented material facts to investors and stakeholders, causing them to invest an additional $26.2 million in the Company. Plaintiff seeks to recover the full $48.7 million from those investments.[192]

This non-exhaustive list of allegations reflects the challenge in determining who is

responsible for what and to whom.  The Amended Complaint should have made it clear which

allegation supports each cause of action.  The Amended Complaint should provide notice to each

Officer Defendant of what actions the Trustee alleges he did.  The Amended Complaint

overwhelmingly fails to do so, leaving the Officer Defendants and the Court forced to speculate,

among other things: 1) whether the allegation is material; 2) to whom the allegation refers; and 3)

to which count does the allegation refer; and 4) who are the other actors involved.  Such confusion

coupled with vagueness is wholly unacceptable, particularly given that this Amended Complaint is the Trustee's second bite at the apple.

In sum, the Amended Complaint is the epitome of a "shotgun pleading." The deficiencies in the Amended Complaint, coupled with the time barred allegations amount to the textbook definition of a "shotgun pleading." Accordingly, the Trustee's 56-page, 189-paragraph, Amended Complaint fails to comply with Rule 8(a). While the Amended Complaint is a shotgun pleading, the Court recognizes that the Trustee requested the opportunity to amend. The Court will continue its analysis to determine whether any causes of action are futile or the Trustee may replead. The Court takes this approach with the understanding that while a shotgun pleading is a defective pleading, the Federal Rules of Civil Procedure and the Third Circuit provide for a liberal standard regarding amendments.

To the extent that any cause of action survives this Court's analysis of plausibility/futility the Trustee may amend his shotgun pleading. In repleading, the Trustee: (1) may not incorporate all 163 factual paragraphs into each count; (2) must indicate which of the factual paragraphs support each individual count alleged; and (3) must identify what precise conduct is attributable to each individual defendant separately in each count when asserting a single count against multiple defendants.

### D.  Count I – Breach of the Duty of Loyalty as to the Officer Defendants

As a matter of Delaware law, "[t]he elements of a breach of fiduciary duty claim are (1) that the fiduciary duty exists and (2) that the fiduciary breached that duty."[193] The parties agree that Delaware law applies to this cause of action.[194]  For a fiduciary duty to exist, there must first be a fiduciary relationship. In Delaware, it "has long been recognized that fiduciary duties are imposed on directors and officers of a Delaware corporation."[195] The Amended Complaint alleges

that each of the Officer Defendants were fiduciaries of the Debtor.[196]    Whether the Officer

Defendants owed fiduciary duties to the Debtor is not in dispute.

The inquiry is, once again, whether the Trustee alleged adequate facts to demonstrate a

breach of the Officer Defendants' fiduciary duties.  The Trustee alleges the Officer Defendants

breached: (1) the duty of disclosure and candor; and (2) the duty of loyalty.

The Court adopts and incorporates the same legal framework for the breach of loyalty claim

asserted against the Outside Director Defendants discussed previously.  The Court now examines

the elements for a breach of the fiduciary duty of loyalty with the allegations in the Amended

Complaint to determine whether any are either (a) mere conclusions that are not entitled to the

assumption of truth or (b) well-pleaded factual allegations that should be assumed as truthful in

the Court's determination of "whether they plausibly give rise to an entitlement for relief."[197]

### 1.  <u>The Trustee Failed to Adequately Plead Self-Dealing on the Part of the Officer Defendants</u>

"Self-dealing" is a legal concept, which is applied to a transaction in which a fiduciary

derives a personal benefit from a transaction with or involving the entity to which he owes the

fiduciary duty.[198] A common example of self-dealing occurs when a corporate director appears on

both sides of a transaction or receives a benefit not shared by the shareholders generally.[199]

Here, the Trustee argues that the Officer Defendants conducted "themselves in dishonest

and unscrupulous ways to benefit their own agendas at the expense of OpenPeak's financial

condition and reputation."[200] That description is vague and conclusory.  The Amended Complaint

makes the following allegations as to the Officer Defendants allegedly acting in their own self-

interest, rather than that of the Debtor:

- At the same time that Defendant Gittleman was praising the ADAM product, OpenPeak was receiving poor reviews of that product from customers and employees.[201]

- By July 2012, Citrix was in the midst of conducting due diligence, but needed additional time to review "ADAM's business, including the AT&T Toggle account." A former employee recalled that during the due diligence, in an attempt to impress Citrix representatives when they visited OpenPeak's offices, the Officer Defendants hired between 30-40 actors to pretend they were employees to make it appear that the Company was busier and more impressive than it actually was.[202]

- Defendant Gittleman was negotiating a $50 million payment in Citrix stock for himself and other Company employees if certain conditions were met.[203]

- Defendant Gittleman even prepared documents for investors showing them how much they would be diluted by if they did not invest additional funds.[204]

- Defendant Gittleman and the other Officer Defendants wasted corporate assets and unjustly enriched themselves, as they enjoyed lavish lifestyles funded at the Company's expense.[205]

The allegation that Defendant Gittleman was negotiating a $50 million payment in stock for himself and others provides sparse notice of alleged self-dealing. Additionally, this allegation is time barred. The alleged transaction relates to the 2012 time period, which is time barred. As previously discussed, the statute of limitations for breach of fiduciary duty is three years. This alleged transaction was a discrete instance and occurred more than three years prior to the filing the Complaint. The Trustee failed to state a plausible claim for self-dealing and instead, asserts one that is time-barred making it a futile one. As such a curative amendment on the theory of breach of duty of loyalty for self-dealing by the Officer Defendants is both inequitable and futile. The Trustee's claim for breach of loyalty as to the Director Defendants in Count I is dismissed with prejudice.

### 2.  <u>The Business Judgment Rule</u>

The Officer Defendants joined the Outside Director Defendants' argument that the business

judgment rule bars the Trustee's breach of the duty of loyalty claim.[206]  The business judgment

rule applies to officers in addition to directors of a corporation.[207]  The Court relies on the

discussion previously stated in regards to the Outsider Director Defendants.  But the Court need

not analyze the applicability of the business judgment rule because the Trustee failed to adequately

plead any breach of fiduciary duty as it pertains to the duty of loyalty claim.  Whether the Officer

Defendants may only use the business judgment rule as an affirmative defense or the Trustee must

overcome the presumption that the Officer Directors actions were the "classic exercise of business

judgment," is irrelevant at this stage because the Trustee's breach of loyalty claim is based on a

time barred assertion.

### 3.  <u>Breach of the Duty to Disclose</u>

"Corporate fiduciaries can breach their duty of disclosure under Delaware law . . . by

making a materially false statement, by omitting a material fact, or by making a partial disclosure

that is materially misleading."[208]  To state a claim for breach of the duty of disclosure, a plaintiff

must "identify: (1) a material statement or representation in a communication contemplating

stockholder action (2) that is false."[209]

The Trustee alleges that:

- The Officer Defendants grossly overstated the popularity and utilization of OpenPeak's products as well as the financial projections that flowed from the adoption of OpenPeak's technology.[210]

- Defendant Gittleman communicated to an investor that AT&T had signed contracts for 1,000,000 licenses, and that the largest client for Toggle thus far was Home Depot, with 150,000 licenses.[211]
- Defendant Barclay emailed investor Hercules concerning OpenPeak's December 2013 launch of the latest version of Toggle

and falsely stated that, "it is already off to an amazing start. It was clear this week that Toggle has become the core of . . . [AT&T's] enterprise mobility strategy."[212]

- Defendant Gittleman sent a similar email to another investor the following day, reiterating that Toggle was the core of AT&T's enterprise mobility strategy and adding that all of OpenPeak's "major partners have now completed their full launch of the products in late Q4 and we are already seeing growing pipelines, customer wins and revenue."[213]

- Defendant Barclay represented by email to April Young of Hercules that, "revenue from AT&T and BlackBerry have been going fantastic!"[214]

- In connection with their fundraising efforts, the Officer Defendants prepared and circulated financial projections. Those projections, however, were based on unsupportable assumptions and were not realistic.[215]

- OpenPeak's projections were initially prepared by its CFO Lou Salamone ("Salamone"). During early to mid-2013, however, Defendant Barclay took over the preparation of the projections because Defendants Gittleman and Barclay wanted to create projections that were more aggressive than those prepared by Salamone. Thereafter, Barclay prepared the projections, and along with Gittleman, presented the projections to investors.[216]

- In a June 18, 2013 email from Defendant Gittleman to an investor, Gittleman stated, in pertinent part, "that the potential [sale] volume with Blackberry is in the 10Ms of devices in just the next few years." Gittleman lacked a reasonable basis to make this projection and Blackberry never activated a fraction of the tens of millions of licenses forecasted.[217]

- [Officer Defendant Gittleman] also, without a reasonable basis, forecasted tens of millions of dollars for OpenPeak's revenue, gross profits, and EBITDA.[218]

- Defendant Gittleman misrepresented that its patents were original. In reality, much of OpenPeak's patents were part of the core technology of competing companies including BlackBerry, VMware, and others.[219]

- [I]nvestors received an email from a stakeholder who spoke with Defendant Gittleman which stated, "Dan [Gittleman] believes [a

sale] will be in the $200-250M range." On May 18, 2015, investors received an email from a stakeholder which informed them that Gittleman said: "We are still on track for an August sale of the Company. . . . It would be an understatement to say there is significant interest in the Company."[220]

- The Officer Defendants, with the approval of the Director Defendants, improperly and deceptively reused the previously recorded revenue in order to make OpenPeak appear more appealing to a potential investor or suitor.[221]

- Armed with the recycled revenue from 2014, the Officer Defendants raised more than $26 million from investors during 2015.[222]

Similar to the Court's analysis as it pertains to the Director Defendant's duty of loyalty, the Court finds the allegations contain conclusory statements, that are not entitled to an assumption of truth.  This inquiry rests on whether the Trustee alleged adequate facts to plausibly demonstrate a breach of the duty to disclose.  Mere conclusory statements fail to plausibly indicate that the representations were material or false, which is needed when trying to find that a duty to disclose was breached.  Therefore, the Court finds the Amended Complaint is deficient regarding the Officer Defendants duty to disclose.  However, again with an eye towards the Third Circuit's liberality, that cases should be decided on the merits and not mere technicalities, the Court will permit the Trustee to replead with more clarity under the theory of the fiduciary duty of duty to disclose. [223]  The Trustee may replead as already instructed.  While the Court is not deciding collateral estoppel at this juncture (see later discussion), the Court is mindful that many of these allegations relate to conduct between Hercules and the Debtor.  In repleading the Court requests that the Trustee pay special attention to the allegations involving Hercules, in particular, to ensure that they are not the result of an issue that has already been decided by another Court.

### E.  Count II—Corporate Waste

This Circuit recognizes causes of action based on corporate waste or mismanagement must be brought within the three year statutory period.[224] "There are two ways for a corporate waste claim to survive a motion to dismiss: (1) the complaint alleges facts showing that [the debtor] received no consideration, or (2) the complaint alleges that a transfer of corporate assets served no corporate purpose."[225] To prove corporate waste, a plaintiff must show "'an exchange that is so one sided that no business person of ordinary, sound judgment could conclude that the corporation has received adequate considerations.'"[226]  Furthermore, "[t]he test for corporate waste is a stringent one and requires that the plaintiff plead facts showing that no person of ordinary sound business judgment could view the benefits received in the transaction as a fair exchange for the consideration paid by the corporation."[227]  The Trustee alleges that the Officer Defendants wasted corporate assets in a number of paragraphs in the Amended Complaint.  Specifically, those allegations are:

- In addition to wasting corporate assets by causing OpenPeak to fund his extravagant lifestyle, Defendant Gittleman caused the Company to spend money, needlessly, on corporate projects and salaries. For example, by the beginning of 2014, OpenPeak had already abandoned the Java version of ADAM for the PHP version. Nevertheless, Gittleman continued to waste money on the development of the Java version and paid employees who were his friends to work on that project, even though it was not for a legitimate business purpose.[228]

- The Company's officers used their American Express cards to fund personal, non-business related expenses. From at least 2012 through OpenPeak's bankruptcy in 2016, they caused OpenPeak to fund tens of thousands of dollars in personal expenses on things such as entertainment (*i.e.*, movie, concert and theater tickets, trips to Disneyland and Legoland, country club memberships, and other activities), personal needs (*i.e.*, groceries, clothing, shoes and items ordered from Amazon), heath-care needs (*i.e.*, gym memberships, spa treatments, shaving club memberships and medical bills), and other non-work related expenses (*i.e.*, items from Tiffany & Co. and

items from various mail order retailers). Defendant Gittleman bought approximately fifteen Apple Watches for members of his inner circle at the Company, including the front desk receptionist, with Company funds.[229]

- Defendants are liable for the damages arising from the Officer Defendants wasting corporate assets, treating the Company as their personal piggy bank, and taking money out of the Company that was never repaid.[230]

- Defendants Gittleman, Kwon, Barclay and Hill were able to fuel their extravagant lifestyles, in part, based on the large salaries they drew from OpenPeak. Despite all the problems at OpenPeak, including never having a truly functional product, between 2012 and 2016, the four drew collective salaries of $6.98 million.[231]

The Officer Defendants assert that part of the Trustee's causes of action are time-barred to the extent those alleged actions took place more than three years prior to OpenPeak's bankruptcy filing. Again, allegations that are time barred will not be entertained by the Court. The Officer Defendants also argue that the Amended Complaint fails to meet the pleading requirements to assert a claim for corporate waste.[232] The Officer Defendants further argue that the business judgment rule protects the Officer-Defendants' decision-making from a corporate waste claim.[233] The Trustee cites to multiple cases where the courts found that complaints alleging excessive salaries or lavish air travel was satisfactory to withstand a motion to dismiss.[234] The Trustee argues that the Officer Defendants' assertion that the corporate waste claim fails to meet the pleading requirements is legally meritless.[235]

Officers and directors are indeed bound by the same fiduciary duties, and "[t]he duty of loyalty obligates corporate fiduciaries to commit themselves to the business of the corporation [in good faith] with the attitude of promoting the corporation's interests, not their own."[236] Corporate waste is a rare "unconscionable case[ ] where directors irrationally squander or give away corporate assets."[237] "To prevail on a waste claim or a bad faith claim, the plaintiff must overcome

the general presumption of good faith by showing that the board's decision was so egregious or irrational that it could not have been based on a valid assessment of the corporation's best interests."[238] However, a director's acting on bad faith does not necessarily constitute waste, unless no "businessperson of ordinary, sound judgment [could] conclude[] that the corporation received adequate consideration."[239]

### 1.  <u>Conduct Occurring After September 27, 2013 is not Time-Barred</u>

Under Delaware law, the statute of limitations for corporate waste is three years.[240]  Many of the allegations regard the Officer Defendants' alleged actions contributing to corporate waste occurred before September 27, 2013, three years prior to OpenPeak's bankruptcy filing.  The Court previously recited the issues relating to the Amended Complaint's disarray of allegations.  It is not the Court's responsibility to parse apart the Amended Complaint to decipher exactly which allegations are time-barred and which allegations are still at play.  Regardless, the Court reviewed the Amended Complaint and will only discuss the following allegations for waste of corporate assets as all others appear to be time-barred:

- <u>Salaries</u> – The Trustee alleges that in 2015 "the Officer Defendants drew salaries of $1.6 million."[241]

- <u>2014 Java Expenses</u> – The salaries and money spent on the development of the Java program after OpenPeak allegedly replaced the Java version with a PHP version at the end of 2013.[242]

- <u>Consumer Electronics Show</u> – Officer Defendant Gittleman allegedly spent in excess of $200,000 on hotel stays.[243] Officer Defendant Gittleman attended the Consumer Electronic Show each year through 2015 and paid for separate hotel rooms for OpenPeak employees.[244]

The Trustee also failed to provide information to overcome the business judgment presumption, which the Court will discuss more below.   Should the Trustee wish to replead to

support his mere conclusory statements with information that is not time barred regarding corporate waste, along with the excessive personal spending listed, the Trustee may do so. In the event that the Trustee chooses to replead, the only facts that should be included are the ones relevant to the non-time barred claims.  The Trustee may replead as already instructed.

## 2.  The Business Judgment Rule

The Officer Defendants argue that the business judgment rule applies to shield their decision-making from a claim of corporate waste.[245]  As discussed previously in the section regarding the Outside Director Defendants' motion, the Third Circuit explained that "[g]enerally speaking, we will not rely on an affirmative defense such as the business judgment rule to trigger dismissal of a complaint under Rule 12(b)(6). [However,] [a] complaint may be dismissed under Rule 12(b)(6) where an unanswered affirmative defense appears on its face."[246]  The plaintiff "must plead that he overcomes the presumption created by that rule" by showing either inattention or irrationality.[247]

Again, as stated above, the Court relies on the law as discussed in the Outsider Director Defendant section.  The Trustee is permitted to replead breach of fiduciary duty as it pertains to corporate waste.  Whether the Officer Defendants asserted that the actions taken by them amounted to a "classic exercise of business judgment," is irrelevant at this stage because the Trustee is permitted to replead Count II.  The Trustee may replead to the extent the allegation is not more than three years prior to the Petition.

## F.  Count III—Unjust Enrichment

Count III of the Amended Complaint alleges unjust enrichment against the Officer Defendants.[248]  Delaware law defines unjust enrichment as "the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles

of justice or equity and good conscience."[249]  "The elements of unjust enrichment are: (1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law."[250]

The Officer Defendants' Motion argues that Count III must be dismissed because the Trustee failed to plead the fifth element required under Delaware law, "the absence of a remedy provided by law."  The Officer Defendants argue that a failure to allege each element requires this Court to dismiss Count III.  The Trustee asserts that because he requested the equitable remedy of disgorgement as relief, this satisfies the fifth element requirement.  This Court disagrees.  In order to satisfy Rule 8(a), the Trustee must allege every element of the asserted cause of action.  Here he fails to do so.

The Amended Complaint alleges, among other things, that the "Officer Defendants wasted corporate assets and unjustly enriched themselves, as they enjoyed lavish lifestyles funded at the Company's expense."[251]  Specifically, the Amended Complaint alleges the Officer Defendants received large salaries, spent excessively on private jet travel and hotels, and received personal loans that went unpaid to OpenPeak.[252]  As a remedy, Count III requests that the Court disgorge "the improper benefits which [the Officer Defendants] unjustly obtained at the expense of OpenPeak and its stakeholders."[253]  The Trustee's request for disgorgement fails to satisfy the fifth element for unjust enrichment, which requires a plaintiff to show that "absent an unjust enrichment claim the plaintiffs will have no remedy to recover the benefit of which they were wrongfully deprived."[254]  Again, the Amended Complaint requests disgorgement as a remedy for the alleged unjust enrichment.  Under Count I, the Trustee alleged that there is "no adequate remedy at law."[255] Under Count II, the Trustee alleged that there is "no adequate remedy at law."[256] Under Count III,

however, the Trustee failed to allege that there is no remedy available at law.  The failure to plead a necessary element is grounds for dismissal.    Accordingly, Count III is dismissed with prejudice.

The Court notes that any cause of action in Count III predating September 27, 2013 would have been time-barred if the count survived.

### G.  Count IV—Fraudulent Transfers

Count IV of the Trustee's Amended Complaint asserts that certain transfers made by OpenPeak to the Officer Defendants prior to filing bankruptcy constitute fraudulent transfers pursuant to 11 U.S.C. §§ 548(a)(1); 544(b); 550(a); and N.J. Stat. § 25:2-20 *et seq*.  The Trustee contends that the alleged transfers were fraudulent as to then present and future creditors.[257]  First and foremost, the Trustee lumps both the state and federal fraudulent conveyance actions into one count, making no attempt to separate the two.  This is just another example of the Amended Complaint amounting to a shotgun pleading.

Additionally, the Trustee's Amended Complaint alleges both actual and constructive fraud.[258]  While the Trustee contends that his claim for fraudulent transfer does not necessitate a heightened pleading standard for actual fraud,[259] his pleadings suggest otherwise.  However, the Court will accept the Trustee's waiver of any actual fraud allegations and the portion of Count IV that relates to actual fraud is dismissed with prejudice.

The plausibility standard of Rule 8(a)(2) applies to constructive fraudulent transfer claims.[260]

### 1.  Constructive Fraud Under Federal Law

To be successful on a fraudulent transfer claim under 11 U.S.C. § 548(a)(1)(B), the plaintiff must show that the transfer was made within two years before the petition date and the debtor:

(B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;

(III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or

(IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.[261]

Pursuant to 11 U.S.C. § 544(b), "a trustee in bankruptcy may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable state law by a creditor holding an allowable, unsecured claim."[262]

The Trustee originally asserts that the claims are not time-barred and the alleged problematic transfers took place within the two-year period preceding OpenPeak's bankruptcy filing.[263]   The Trustee later acknowledges that several of the alleged transfers are time-barred recognizing the futility of the claims that pre-date the two years prior to the filing.[264]   However, the Trustee asserts that the Amended Complaint still properly pleads claims for certain fraudulent transfers because it alleges that:

- [T]he Officer Defendants engaged in a course of conduct by which they drew excessive salaries and used OpenPeak funds to pay for their personal expenses.[265]

- [T]he Officer Defendants intended to hinder, delay, or defraud OpenPeak's creditors by making such transfers, to the Officer Defendants' benefit, without consideration to OpenPeak.[266]

- [A]t the time of such transfers, OpenPeak had little to no capital and/or believed that the debts in question would be beyond the Company's ability to pay them as they matured.[267]

- [A]t the time of such transfers, OpenPeak and the Officer Defendants knew the Company was insolvent.[268]

Applying the statute of limitations under federal law, the Court must consider the Trustee's allegation of fraudulent transfers in regard to excessive salaries, and personal loans. It is difficult to determine which of those claims are time barred because many of the allegations are conclusory. When claims are conclusory, they do not provide the information that the Court needs to make a determination for constructive fraudulent transfer, *i.e.,* provide the Court with the explanation of how the company did not received reasonable equivalent value for what it was transferred. Simply stating a salary was excessive fails to indicate to the Court that the company received less than equivalent value. As for the personal loans, the Trustee failed to state that the loans remain unpaid. Simply describing a loan—especially if it falls outside of the statutory lookback period—is not a plausible claim for constructive fraud. The Court cannot guess as to what the Trustee is referring to when making a fraudulent transfer allegation. While some claims may not survive the two year look back period, they may survive the four-year lookback period under state fraudulent transfer law which will be discussed further below.

The section 548 time barred causes of action are dismissed with prejudice. The Trustee may replead the non-futile section 548 fraudulent transfer claims (if any) that survive the two-year lookback. The instructions for repleading are already set forth by the Court.

**2.** **Choice of Law and State Law Constructive Fraudulent Transfer Claim**

The Court will apply New Jersey law to the state law fraudulent transfer claims since it is the forum state. In reaching this conclusion, the Court need not embark on an in-depth choice of

law analysis.  "[W]here [the Court] has jurisdiction and where competing laws conflict, the Court should apply the most significant relationship choice of law standard to determine which state law applies to the fraudulent transfer claim."[269]

"The most significant relationship test consists of two steps.  Procedurally, the first step is to determine whether an actual conflict exists between the laws of the various states by examining the substance of the potentially applicable laws."[270]  "If there is no distinction between the laws, there is no choice of law issue to be resolved and the court will apply the law of the forum state."[271] If an actual conflict exists, a court may turn to the Restatement (Second) of Conflict of Laws (the "**Restatement**") to aid in its choice of law analysis.[272]  In *FAH Liquidating Corp.*, the threshold issue for the court was whether German law or the California or Delaware Uniform Fraudulent Transfer Act applied to the Trustee's 11 U.S.C. § 544(b)(1) claim.[273]  Finding that a conflict of law existed, the court opined that it should apply the most significant relationship standard.[274]  To apply this standard, the court turned to the Restatement and explained that the Restatement "provides factors relevant to the most significant relationship test. . . ."[275]  While the Restatement "does not provide a general framework of the most significant relationship test for fraudulent conveyance actions as it does for tort actions or restitution actions, . . . the frameworks for tort and restitution actions are similar and provide guidance here."[276]

Here, no distinction exists between the applicable laws of Florida, Delaware, and New Jersey, which are the suggested forums.  "It is undisputed that the Delaware and New Jersey Fraudulent Transfer Acts track section 548 of the Bankruptcy Code (or vice versa)."[277]  Florida's Fraudulent Transfer Act similarly parallels 11 U.S.C. § 548.[278]  As stated, when there is no real conflict between the choice of law, the Court may utilize the law of the forum state.  Here, there is no real conflict.

Notwithstanding the similarity in the three fraudulent transfer statutes, the Officer

Defendants maintain that Delaware law and the limitations period pursuant to 6 Del. Code § 1309

governs.[279]  But 6 Del. Code § 1309, which governs extinguishment of a cause of action, parallels

both N.J.S.A. § 25:2–31 and Fla. Stat. § 726.110 establishing extinguishment at four years.

Accordingly, because no distinction exists between the applicable laws, the Court finds and

concludes that New Jersey law, as the law in the forum state, governs.

The Court next looks to N.J.S.A. § 25:2–25(b) to define the elements of constructive

fraudulent transfer:

> [a] transfer made or obligation incurred by a debtor is fraudulent as
> to a creditor, whether the creditor's claim arose before or after the
> transfer was made or the obligation was incurred, if the debtor
> made the transfer or incurred the obligation:
>
> . . . .
>
> b. Without receiving a reasonably equivalent value in exchange for
> the transfer or obligation, and the debtor:
>
> (1) Was engaged or was about to engage in a business or a
> transaction for which the remaining assets of the debtor were
> unreasonably small in relation to the business or transaction; or
>
> (2) Intended to incur, or believed or reasonably should have
> believed that the debtor would incur, debts beyond the debtor's
> ability to pay as they become due.[280]

Section 25:2-25(b) of the New Jersey Fraudulent Transfer Act governs fraudulent transfers as to

present and future creditors.

The Trustee alleges that the Debtor received less than the reasonably equivalent value for

certain alleged transfers.[281] The Trustee alleges that the salaries earned by the Officer Defendants

in 2015 and allegedly part of 2016, were excessive.[282]  Other than providing the span of the years,

the Trustee fails to identify the date and amounts of each salary payment.  Instead choosing to lump them in yearly amounts.[283]

Any remaining claims for fraudulent transfer, if there are any, fail to satisfy the pleading requirements under Rule 8(a).  To the extent that the "when" has been specified and extends beyond the four years of OpenPeak's bankruptcy filing, the claims are time-barred.  Further, due to the lack of identifying the who, when, and how much in many of the allegations, the Court will not presume those allegations are timely asserted.

The Court will not belabor the point and continue to guess at every potential allegation that may or may not be intended to be asserted as a claim for fraudulent transfer.  In recognizing the Third Circuits view that cases should be decided on the merits and not mere technicalities, the Court will permit the Trustee to replead under the theory of constructive fraud as it pertains to the excessive salaries and the allegations of personal loans taken by Director Defendants so long as they have already been alleged and are not time barred.  The Trustee may replead as already instructed.

### H.  Collateral Estoppel

The Officer Defendants request that this Court apply collateral estoppel to bar relitigating identical factual issues decided by Judge Middlebrooks in the Hercules Lawsuit.  A dispute exists as to whether the Trustee was virtually represented by Hercules.  The Court declines to conduct a collateral estoppel analysis at this stage of the case.  However, the Officer Defendants are free to raise the issue at a later date.  The Court's Opinion should not be interpreted with either favor or disfavor regarding collateral estoppel.

## **CONCLUSION**

For the reasons set forth in this Opinion:

(1) The Director Defendants' Motion to Dismiss is GRANTED;

(2) The Officer Defendants' Motion to Dismiss is GRANTED in part and DENIED in part;

(3) The Trustee shall have until January 15, 2020 to replead the surviving causes of action.  Failure to timely do so without further Order of the Court shall result in a dismissal with prejudice as to all counts of the Amended Complaint;

(4) The Outside Director Defendants shall submit an appropriate Order within five days of the docketing of this decision; and

(5) The Officer Defendants shall submit an appropriate Order within five days of the docketing of this decision.

**DATED: December 10, 2020**

_Stacey L. Meisel_
Honorable Stacey L. Meisel
United States Bankruptcy Judge

[1] ECF No. 29.  All references to the docket herein are to the Adversary Proceeding except when specifically referencing the main Chapter 7 case (the "**Main Case ECF No.**").

[2] ECF No. 36.

[3] ECF No. 37.

[4] *In re National Service Industries, Inc.*, 2015 WL 3827003, *2 (Bankr. D. Del. June 19, 2015); *see Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665 (2015).

[5] *See Wellness*, 575 U.S. at 665.

[6] ECF No. 37-1 at 22; ECF No. 36-1, n.17.

[7] *In re AgFeed USA, LLC*, 546 B.R. 318, 323 (Bankr. D. Del. 2016).

[8] Main Case ECF No. 1

[9] ECF No. 1; Main Case ECF No. 112.

[10] ECF Nos. 15 and 27.

[11] ECF No. 29.

[12] *Id.* ¶ 47.

[13] *Id.* ¶ 59.

[14] *Id.* ¶ 48.

[15] *Id.* ¶¶ 60, 62–64.

[16] *Id.* ¶ 49.

[17] *Id.* ¶¶ 51–53.

[18] *Id.* ¶ 50.

[19] *Id.* ¶¶ 54–55.

[20] *Id.* ¶ 56.

[21] *Id.* ¶¶ 65–66.

[22] *Id.* ¶ 67.

[23] *Id.* ¶ 69.

[24] *Id.* ¶ 73.

[25] *Id.* ¶ 74.

[26] *Id.* ¶ 75.

[27] *Id.* ¶ 76.

[28] *Id.* ¶ 78.

[29] *Id.* ¶ 78.

[30] *Id.* ¶¶ 80–83.

[31] *Id.* ¶¶ 84–85.

[32] *Id.* ¶ 86.

[33] *Id.* ¶¶ 87–88.

[34] *Id.* ¶ 90.

[35] *Id.* ¶¶ 91–92.

[36] *Id.* ¶¶ 93–97.

[37] *Id.* ¶¶ 99–103.

[38] *Id.* ¶¶ 143–44.

[39] *Id.* ¶¶ 130–44.

[40] *Id.* ¶ 146.

[41] *Id.* ¶¶ 147–48.

[42] *Id.* ¶¶ 149–51.

[43] *Id.* ¶ 152.

[44] *Id.* ¶¶ 155–56.

[45] *Id.* ¶ 165.

[46] *Id.*

[47] *Id.*

[48] *Id.* ¶ 166.

[49] *Id.* ¶ 167.

[50] *Id.* ¶ 169.

[51] *Id.* ¶ 172.

[52] *Id.* ¶ 173.

[53] *Id.* ¶ 176.

[54] *Id.* ¶ 177.

[55] *Id.* ¶¶ 179-87.

[56] ECF No. 36.

[57] ECF No. 36-2.

[58] ECF No. 37.

[59] ECF No. 37-2.

[60] ECF No. 37 at 2; *See* ECF No. 37-3.

[61] ECF Nos. 37-3 and 37-4.

[62] ECF No. 52 at 13.

[63] *See* ECF No. 29, ¶¶ 94, 101-10, 111, 113, 115-17, 121.

[64] ECF Nos. 47 and 48.

[65] ECF No. 47 at 31–33.

[66] *Id.* at 31.

[67] ECF No. 47 at 45.

[68] *Id.* at 51.

[69] *Id.* at 51–52.

[70] ECF Nos. 51 and 52.

[71] ECF No. 52 at 13.

[72] ECF Nos. 58 and 61.

[73] ECF No. 62.

[74] ECF No. 65.

[75] ECF No. 67.

[76] ECF No. 36-1, n.1.

[77] Fed. R. Civ. P. 12(b)(1).

[78] *Common Cause of Pa. v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir. 2009) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006)).

[79] *Phila. Fed'n of Teachers v. Ridge*, 150 F.3d 319, 323 (3d Cir. 1998) (citing *Renne v. Geary*, 501 U.S. 312, 316 (1991)).

[80] *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

[81] *Kalick v. United States,* 35 F.Supp. 3d 639, 644 (D.N.J. 2014) *aff'd*, 604 F. App'x 108 (3d Cir. 2015) (citing *Cardio–Med. Assocs. v. Crozer–Chester Med.  Ctr.,* 721 F.2d 68, 75 (3d Cir. 1983)).

[82] *Kalick v. United States,* 35 F.Supp. 3d at 644 (citing *Licata v. U.S. Postal Serv.,* 33 F.3d 259, 260 (3d Cir. 1994)).

[83] Fed. R. Bankr. P. 7012; Fed. R. Civ. P. 12(b)(6).

[84] *Logan v. Bd. of Educ. of Sch. Dist. of Pittsburgh*, 742 F. App'x 628, 631–32 (3d Cir. 2018) (quoting *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016)).

[85] *Logan v. Bd. of Educ. of Sch. Dist. of Pittsburch, 742 F.App'x* at 632 (citing *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1197 (3d Cir. 1993)).

[86] *Phillips v. County of Alleghany*, 515 F.3d 224, 233 (3d Cir. 2008) (citations and quotations omitted).

[87] *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 322 (3d Cir. 2008) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

[88] *Twombly*, 550 U.S. at 558.

[89] *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (internal citations, quotations, and modifications omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 at 675) (2009)).

[90] *See Glunk v. Pennsylvania State Bd. of Med.*, 687 F. App'x 196, 203 (3d Cir. 2017); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

[91] *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 184 (3d Cir. 2000) (citing *City of Pittsburgh v. West Penn Power Co.,* 147 F.3d 256, 263 n. 13 (3d Cir. 1998) (quoting *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.,* 113 F.3d 405, 417 (3d Cir. 1997))).

[92] *Allegheny*, 515 F.3d at 236 (citing *Grayson v. Mayview State Hosp.,* 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000)).

[93] ECF No. 47 at 30.

[94] Fed. R. Civ. P. 9(b).

[95] *See* Fed. R. Civ. P. 8(a).

[96] *Lum v. Bank of Am.*, 361 F.3d 217, 223–24 (3d Cir. 2004) (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)).

[97] *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 514 (2002) (citing *Conley*, 355 U.S. at 48).

[98] Fed. R. Civ. P. 8(d)(1).

[99] *Rogers v. City of Wilkes-Barr*e, No. 3:18-CV-0039, 2018 WL 3344936, at *4 (M.D. Pa. July 9, 2018) (citing *In re Westinghouse Secs. Litig.*, 90 F.3d 696, 702 (3d Cir. 1996) (further citations omitted)).

[100] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

[101] *In re DSI Renal Holdings, LLC*, 574 B.R. 446, 471 (Bankr. D. Del. 2017).

[102] *In re Fruehauf Trailer Corp.*, 250 B.R. 168, 197-98 (D. Del. 2000).

[103] *Forman v. Salzano* (*In re Norvergence, Inc.*), 405 B.R. 709, 726 (Bankr. D. NJ. 2009) (Gambardella, R.) (citing *In re Inacom Corp.*, 2001 Bankr. LEXIS 1297 at *6 (D. Del. 2001) (further citation omitted)).

[104] *Forman v. Salzano* (*In re Norvergence, Inc.*), 405 B.R. 709 at 746 (Citing *Rothman, et al. v. Specialty Care Network, Inc.*, 2000 U.S. Dist. LEXIS 15433 at * 6 (E.D.Pa. 2000)).

[105] ECF No. 36-1 at 26.

[106] *In re Jack Greenberg, Inc.*, 212 B.R. 76, 82 (E.D. Pa. 1997) (citing *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416 (1972)).

[107] ECF No. 29, ¶ 1.

[108] *N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla*, 930 A.2d 92, 103 (Del. 2007) (emphasis in original).

[109] *Id.* (emphasis in original); *see also Production Resources Group, LLC v. NCT Group, Inc.*, 863 A.2d 772, 792 (Del. Ch. 2004) ("The firm's insolvency . . . makes the creditors the principal constituency injured by any fiduciary breaches that diminish the firm's value and logically gives them standing to pursue these claims to rectify that injury.").

[110] *In re Tropicana Entm't, LLC*, 520 B.R. 455, 471–72 (Bankr. D. Del. 2014) (citing *Production Resources*, 863 A.2d at 792 "[T]he fact that a firm has become insolvent *after* the acts that are alleged to have been fiduciarily improper does not convert a claim belonging to the corporation into one belonging to creditors. . . . The later fact of insolvency does not transform the nature of the claim; it simply changes the class of those eligible to press the claim derivatively, by expanding it to include creditors.") (emphasis in original)).

[111] *In re Scott Acquisition Corp.*, 344 B.R. 283, 290–91 (Bankr. D. Del. 2006) (citing *Bondi v. Grant Thornton Int'l (In re Parmalat Sec. Litig.)*, 377 F.Supp.2d 390, 420 (S.D.N.Y. 2005)).

[112] *Id.*

[113] ECF No. 36-1 at 24 (citing *Torch Liquidating Trust v. Stockstill*, 561 F.3d 377 (5th Cir. 2009)).

[114] *Torch Liquidating Tr.*, 561 F.3d at 386 (5th Cir. 2009) (further citations omitted).

[115] *Id.*

[116] *Id.* at 390 ("When asked during oral argument to identify any specific pleading permitting an inference of injury to Torch, plaintiff could identify none. We conclude that the amended complaint thus fails to state a claim for breach of the fiduciary duties that the Directors owed to Torch.").

[117] ECF No. 37-1 at 10; ECF No. 47, n.4.

[118] *Malleus*, 641 F.3d at 563 (3d Cir. 2011).

[119] *In re Tropicana Entm't, LLC*, 520 B.R. at 470 (Bankr. D. Del. 2014) (citing *York Lingings v. Roach,* No. 16622–NC, 1999 WL 608850, *2 (Del. Ch. July 28, 1999)).

[120] *N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla*, 930 A.2d at 99.

[121] ECF No. 29, ¶ 165 ("each of the Defendants, as an officer and/or Director, was a fiduciary of the Company . . .").

[122] *In re Midway Games, Inc.*, 428 B.R. 303, 318 (D. Del. 2015) (quoting *Weinberger v. UOP, Inc.,* 457 A.2d 701 (Del. 1983) (citing *Guth v. Loft, Inc.,* 5 A.2d 503, 510 (Del. 1939)).

[123] *In re USDigital, Inc.*, 443 B.R. 22, 41 (Bankr. D. Del. 2011) (internal quotations and citations omitted).

[124] *Midway Games*, 428 B.R. at 318.

[125] *Malleus*, 641 F.3d at 563 (3d Cir. 2011).

[126] *Cinerama, Inc. v. Technicolor, Inc.*, 663 A.2d 1156, 1169 (Del. 1995) (quoting *Sinclair Oil Corp. v. Levien,* Del. Supr., 280 A.2d 717, 720 (1971)).

[127] *Cinerama, Inc.*, 663 A.2d at 1169 (internal citations omitted).

[128] *Midway Games*, 428 B.R. at 318.

[129] ECF No. 48 at 16 ("Directors taking action in their own interest, to the detriment of the corporation, is a quintessential violation of the duty of loyalty.")

[130] ECF No. 29, ¶ 154 (emphasis added).

[131] *Id.* ¶ 155 (emphasis added).

[132] *Id.* ¶ 156.

[133] *Id.* ¶ 155.

[134] 115 A.3d 535, 547 (Del. Ch. 2015) (emphasis added); *see also Creditors' Committee of Star Telecomm'ns, Inc. v. Edgecomb*, 385 F. Supp. 2d 449, 460–61 (D. Del. 2004) ("No precedent cited by the Plaintiff stands for the proposition

that stock ownership, coinciding with a Board decision that may affect the price of those shares, is adequate to show a breach of the duty of loyalty.")

[135] *See Quadrant*, 115 A.3d at 547; *Star Telecomm'ns, Inc,* 385 F. Supp at 460–61.

[136] *See Wilkerson*, 522 F.3d at 322.

[137] *Midway Games*, 428 B.R. 318.

[138] *Id.*

[139] *Id.* (citing *Stone v. Ritter,* 911 A.2d 362, 370 (Del. 2006)).

[140] *In re Caremark Int'l*, 698 A.2d 959, 967 (Del. Ch. 1996).

[141] *See* ECF No. 50 at 16 ("Plaintiff's Opposition concedes that he 'does not rely' on any claim 'which would implicate' a *Caremark* duty of oversight." "Accordingly, any 'oversight' and duty of care claims against the Outside Director Defendants should be dismissed.").

[142] ECF No. 48 at 24–25 (emphasis added and further citations omitted).

[143] *Midway Games*, 428 B.R. at 318.

[144] ECF No. 29, ¶ 149.

[145] *Id.* ¶ 150 (emphasis added).

[146] *Id.* ¶ 151 (emphasis added).

[147] *Id.* ¶ 152.

[148] *Id.* ¶ 153.

[149] *Quadrant Structured Prods. Co., Ltd. v. Vertin*, 115 A.3d at 547.

[150] *Midway Games*, 428 B.R. at 318–19.

[151] *Id.*

[152] *Id.*

[153] *In re Tower Air, Inc.*, 416 F.3d 229 (3d Cir. 2005).

[154] *Id.* at 238 (internal citations omitted).

[155] *Id.*

[156] *Id.* at 239.

[157] *Id.*

[158] *Id.*

[159] *Id.*

[160] ECF No. 37-1 at 14–15.

[161] *Id.* at 8.

[162] ECF No. 47 at 30.

[163] ECF No. 37-1 at 20.

[164] *Bartol v. Barrowclough*, 251 F. Supp. 3d 855, 859 (E.D. Pa. 2017) (quoting *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321–23 (11th Cir. 2015); *see also* Fed. R. Civ. P. 8(a)(2)).

[165] *Bartol*, 251 F. Supp. 3d at 859 (quoting *Weiland*, 792 F.3d at 1321–23) (internal quotations omitted).

[166] *Bartol*, 251 F. Supp. 3d at 859 (quoting *Weiland*, 792 F.3d at 1323).

[167] *Milo, LLC v. Procaccino*, No. CV 16-5759, 2020 WL 1853499, at *10 (E.D. Pa. Apr. 13, 2020) (citing *M.B. v. Schuylkill Cty.*, 375 F.Supp.3d 574, 587 (E.D. Pa. 2019) (quoting *Bartol*, 251 F. Supp. 3d at 860)).

[168] ECF No. 37-1 at 20–21.

[169] ECF No. 47 at 55–57.

[170] *Id.*

[171] *Bartol*, 251 F. Supp. 3d 855.

[172] *Id.* at 860 (citing *Weiland*, 792 F.3d at 1321).

[173] *Id.* (citing *Weiland*, 792 F.3d at 1323).

[174] *Gov't Employees Ins. Co. v. Pennsauken Spine & Rehab P.C.*, 2018 WL 3727369, at *3 (D.N.J. Aug. 6, 2018) (citing *Weiland*, 792 F.3d 1313, 1323 (11th Cir. 2015); *Lapella v. City of Atl. City*, Civ. No. 10-2454 (JBS/JS), 2012 WL 2952411, at *5 (D.N.J. July 18, 2012)).

[175] *See Grande v. Starbucks Corp.*, No. CV 18-04036, 2019 WL 1455445 (E.D. Pa. Apr. 2, 2019).

[176] *See e.g, In re Bishop*, 578 B.R. 158, 167 (Bankr. W.D.N.Y. 2017; *In re Palm Beach Fin. Partners, L.P.*, 488 B.R. 758, 768 (Bankr. S.D. Fla. 2013); *In re Mortgages Ltd.*, No. 2:08-BK-07465-RJH, 2013 WL 1336830, at *12 (Bankr. D. Ariz. Mar. 29, 2013); *In re DVI, Inc.*, 326 B.R. 301, 309 (Bankr. D. Del. 2005).

[177] ECF No. 37-1 at 21 (citing ECF No. 29 at ¶¶ 164, 171, 176, 180) (emphasis added)

[178] ECF No. 37-1 at 21.

[179] *Id.* at 56.

[180] *Id.* at 57.

[181] *Id.* at 19, fn 2.

[182] ECF No. 37-1 at 20.

[183] ECF No. 47 at 56.

[184] ECF No. 29 ¶ 43.

[185] *Id.* ¶ 43.

[186] *Id.* ¶ 43.

[187] *Id.* ¶ 44.

[188] *Id.* ¶ 58.

[189] *Id.* ¶ 77.

[190] *Id.* ¶ 116.

[191] *Id.* ¶ 122.

[192] *Id.* ¶ 158.

[193] *In re Tropicana Entm't, LLC*, 520 B.R. at 470 (Bankr. D. Del. 2014) (citing *York Lingings v. Roach,* No. 16622–NC, 1999 WL 608850, *2 (Del. Ch. July 28, 1999)).

[194] ECF No. 37-1 at 10; ECF No. 47, n.4.

[195] *Malone v. Brincat*, 722 A.2d 5, 10 (Del.1998).

[196] ECF No. 29, ¶ 165 ("each of the Defendants, as an officer and/or Director, was a fiduciary of the Company . . .).

[197] *Malleus*, 641 F.3d at 563 (3d Cir. 2011).

[198] *In re National Auto Credit Inc. S'holders Litig.*, 2003 WL 139768, at *8 (Del.Ch. Jan.10, 2003), (quoting *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984)). *See also Orman v. Cullman*, 794 A.2d 5, 23 (Del. Ch.2002).

[199] *Cede & Co. v. Technicolor*, 634 A.2d 345, 362 (Del. 1993).

[200] ECF No. 47 at 37.

[201] ECF No. 29. ¶ 45.

[202] *Id.* ¶ 134.

[203] *Id.* ¶ 138.

[204] *Id.* ¶ 147.

[205] *Id.* ¶ 68.

[206] ECF No. 37-1 at 16.

[207] *See, e.g., Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 361 (Del. 1993), decision modified on reargument, 636 A.2d 956 (Del. 1994).

[208] *Shaev v. Adkerson*, 2015 WL 5882942, at *9 (Del. Ch. Oct. 5, 2015) (citing *O'Reilly v. Transworld Healthcare, Inc.*, 745 A.2d 902, 916 (Del. Ch. 1999)).

[209] *Id.*

[210] ECF 29. ¶ 89.

[211] *Id.* ¶ 92.

[212] *Id.* ¶ 93.

[213] *Id.* ¶ 94.

[214] *Id.* ¶ 96.

[215] *Id.* ¶ 99.

[216] *Id.* ¶ 99.

[217] *Id.* ¶ 103(a).

[218] *See Id.* ¶¶ 103(b), 103(c), 103(d), 103(e), 105, 106.

[219] *Id.* ¶ 109.

[220] *Id.* ¶ 123.

[221] *Id.* ¶ 116.

[222] *Id.* ¶ 119.

[223] The Court need not analyze whether Rule 8(a) or the Rule 9(b) applies.  Currently the Amended Complaint fails to meet the more liberal standard of Rule 8(a).

[224] *In re The Brown Schools*, 368 B.R. 394, 408 (Bankr. D. Del. 2007)(citing 10 Del. C. § 8106).

[225] *In re Direct Response Media, Inc.*, 466 B.R. 626, 657 (Bankr. D. Del. 2012).

[226] *In re Bridgeport Holdings, Inc.*, 388 B.R. 548, 576 (Bankr. D. Del. 2008) (quoting *Official Comm. of Unsecured Creditors of Integrated Health Servs. v. Elkins*, No. 20228, 2004 WL 1949290, *17 (Del. Ch. Aug. 24, 2004); *see also In re Green Field Energy Services, Inc.*, 594 B.R. 239, 299 (Bankr. D. Del. 2018).

[227] *In re Lear Corp. Shareholder Litig.*, 967 A.2d 640, 656 (Del. Ch. 2008); *see also In re Green Field Energy Services, Inc.*, at 299.

[228] ECF No. 29. ¶ 76.

[229] *Id.* ¶ 77.

[230] *Id.* ¶ 161.

[231] *Id.* ¶ 70.

[232] ECF No. 37-1 at 16.

[233] ECF No. 37-1 at 16.

[234] ECF No. 47 at 39–40.

[235] *Id.* at 40.

[236] *In re DSI Renal Holdings LLC*, 574 B.R. 446 (Bankr. D. Del. 2017).

[237] *In re Walt Disney Co. Derivative Litig.*, 907 A.2d 693, 749 (Del. Ch. 2005), aff'd, 906 A.2d 27 (Del. 2006) (quoting *Brehm v. Eisner*, 746 A.2d 244, 263 (Del. 2000)).

[238] *White v. Panic*, 783 A.2d 543, 554 n.36 (Del. 2001).

[239] *Walt Disney Co.*, 907 A.2d 693, 749 (Del. Ch. 2005), aff'd, 906 A.2d 27 (Del. 2006).

[240] 10 *Del. C.* § 8106.

[241] ECF No. 29. ¶ 182.

[242] *Id.* ¶ 45.

[243] *Id.* ¶ 161.

[244] *Id.* ¶ 74.

[245] ECF No. 37-1 at 16.

[246] *In re Tower Air, Inc.*, 416 F.3d at 238 (internal citations omitted).

[247] *Id.*

[248] ECF No. 29. ¶¶ 176–79.

[249] *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010).

[250] *Nemec*, 991 A.2d at 1131.

[251] ECF No. 29. ¶ 68.

[252] ECF No. 29. ¶ 178.

[253] ECF No. 29. ¶ 179.

[254] *Nemec*, 991 A.2d at 1131.

[255] ECF No. 29. ¶ 170.

[256] *Id.* ¶ 170.

[257] ECF No. 29 at 54.

[258] ECF No. 29 at 53–55.

[259] ECF No. 47 at 31.

[260] *See In re PennySaver USA Publ'g, LLC*, 587 B.R. 445, 456 (Bankr. D. Del. 2018); *see also In re Mervyn's Holdings, LLC*, 426 B.R. 488, 498 (Bankr. D. Del. 2010); *contra In re Oakwood Homes Corp.*, 325 B.R. 696, 698 (Bankr. D. Del. 2005) ("There is no question that Rule 9(b) applies to adversary proceedings in bankruptcy which include a claim for relief under §§ 544 or 548, whether it is based upon actual or constructive fraud.").

[261] 11 U.S.C. § 548(a)(1)(B).

[262] *In re Fedders N. Am., Inc.*, 405 B.R. 527, 547 (Bankr. D. Del. 2009).

[263] ECF No. 37-1. at 43.

[264] *Id.* at 19, fn 2.

[265] *Id.* (citing ECF No. 29. ¶¶70–71, 77, 182).

[266] *Id.* (citing ECF No. 29. ¶184).

[267] *Id.* (citing ECF No. 29. ¶185).

[268] *Id.* (citing ECF No. 29. ¶¶186–87).

[269] *In re FAH Liquidating Corp.*, 572 B.R. 117, 129 (Bankr. D. Del. 2017) (citing *Mervyn's LLC*, 426 B.R. 488, 496 n.6 (Bankr. D. Del. 2010) (citing *Travelers Indemn. Co. v. Lake*, 594 A.2d 38, 47 (Del. 1991); *Pennsylvania Employee, Benefit Trust Fund v. Zeneca, Inc.*, 710 F.Supp.2d 458, 466 (D. Del. 2010) (internal quotations omitted). *See also In re NorVergence, Inc.*, 424 B.R. 663, 697 (Bankr. D.N.J. 2010) (applying the "most significant relationship" test to a tort claim)).

[270] *In re Norvergence*, *Inc.*, 424 at 698 (citing *Intrarome Fragrance & Flavor Corp. v. Zarkades,* CV. No. 07–873, 2009 WL 931036 at *5–6 (D.N.J. March 30, 2009); *P.V. v. Camp Jaycee*, 197 N.J. 132, 144 (2008)).

[271] *In re Norvergence*, *Inc.*, 424 at 698 (citing *Intrarome Fragrance & Flavor Corp.,* 2009 WL 931036 at *5–6; *P.V. v. Camp Jaycee*, 197 N.J. at 144; *In re Mercedes-Benz Tele Aid Contract Litigation*, 257 F.R.D. 46 (D.N.J. 2009) (*abrogated on other grounds*)).

[272] *In re FAH Liquidating Corp.*, 572 B.R. at 129.

[273] *Id.* at 128–29.

[274] *Id.* at 129.

[275] *Id.*

[276] *Id.*

[277] *In re Autobacs Strauss, Inc.*, 473 B.R. 525, 567 (Bankr. D. Del. 2012).

[278] *See In re Halpert & Co., Inc.,* 254 B.R. 104, 122–23 (Bankr. D.N.J. 1999).

[279] ECF No. 37-1 at 17.

[280] N.J.S.A. § 25:2-25(a)–(b).

[281] ECF No. 29. ¶ 183.

[282] *Id.* ¶ 71.

[283] *Id.*